2000 ME 37

**Judith GREENWOOD**

v.

**Paul W. GREENWOOD**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 28, 1999.

Decided Feb. 28, 2000.

David Abramson, Smith Elliott Smith & Garmey, P.A., Saco, for plaintiff.

Diane Dusini, Dusini & Livingston, P.A., Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Paul W. Greenwood appeals from an order entered in the Superior Court

(Cumberland County, *Brodrick, A.R.J.*) on Judith Greenwood's motion to enforce the parties' divorce judgment. The Superior Court concluded that a provision in the divorce judgment that set aside to Judith $43,005 from Paul's pension plan and recited that that amount equalled "fifty percent (50%) of the marital component of the Pension Plan," reflected the divorce court's intent to allocate to Judith 50% of the entire marital portion of the pension plan valued at the time of distribution. The court also concluded that Judith's 50% share of Paul's pension plan included 50% of the amount that would be paid to Paul should Paul elect to retire early. We affirm that part of the judgment awarding to Judith 50% of the marital component of the pension plan. We agree with Paul, however, that the divorce court did not intend to divide Paul's early retirement subsidy in its divorce judgment. Accordingly, we vacate that part of the judgment that divides Paul's early retirement subsidy.

[¶ 2] In June of 1995, Judith and Paul Greenwood signed a settlement agreement in conjunction with a divorce action. The settlement agreement directed how their marital property was to be divided. The agreement stated that "[a]ll property divided by this agreement has been equitably divided by the parties," and it provided, in part, that (1) their home would be sold; (2) Judith would receive the first $10,000 from the sale of the home and the parties would divide the remaining proceeds equally; (3) Judith would retain the family car; (4) Judith would receive 50% of the fair market value of Paul's Advest SEP IRA account; and (5) Paul's Worldshares Stock Options would become Paul's sole property. The settlement agreement also addressed Paul's pension plan:

5. *MERCK & CO PENSION PLAN.* The sum of Forty–Three Thousand and Five Dollars (43,005.00) shall be transferred to Wife from Husband's Merck Pension Plan by a Qualified Domestic Relations Order, in the form attached hereto as *Exhibit B.* For purposes of this Agreement, this transfer equals fifty percent (50%) of the value of the marital property component of the Pension Plan.

[¶ 3] In July of 1995, the Superior Court (*Beaudoin, J.*) entered a divorce judgment that ended the Greenwoods' marriage and incorporated the terms of their settlement agreement into the judgment. Pursuant to the divorce judgment, the parties agreed to the terms of a Qualified Domestic Relations Order (QDRO) that called for Merck to distribute $43,005 in a lump sum payment to Judith. The parties submitted the QDRO to Merck, but the company rejected it because a lump sum payment was forbidden under the terms of the pension plan.[1]

[¶ 4] Judith prepared a new QDRO that she submitted to Paul for approval. Paul refused to agree to the terms of the new QDRO because it called for Judith to receive 50% of the entire value of the pension plan that accrued during the marriage and because it allocated to Judith a share of any early retirement benefit that would accrue to the pension plan as a result of Paul's work during the time of the marriage.[2] When Paul refused to sign the QDRO, Judith filed a motion to enforce the divorce judgment and to implement the most recently drafted QDRO. Judith also filed additional motions for relief from judgment pursuant to M.R. Civ. P. 60(b), and for consolidation.

[¶ 5] A hearing on Judith's motions was held in the Superior Court (*Brodrick,*

---

1. Judith actually submitted several QDROs to Merck, all of which were rejected for technical reasons or because they called for an immediate lump sum distribution to Judith.

2. Paul is eligible for an early retirement subsidy if he retires at age 55. A portion of that subsidy is attributable to the years that Paul worked for Merck during his marriage. If eligible, Paul would receive the subsidy through his Merck pension plan.

*A.R.J.*). Three witnesses testified. Attorney Leslie Hallock, who had not participated in the divorce proceeding, testified for Judith. She stated that Judith could not receive a lump sum distribution from Merck until Paul reached the age of 55 in 1999, and she noted that the value of $43,005 in the future has a different value than a lump sum payment in the present. Her opinion was that "the terms of the Settlement Agreement were unclear, incomplete and subject to more than one interpretation." She testified that the draft QDRO she prepared accurately reflected the terms of the settlement agreement because it effected the intent of the parties to divide the marital portion of Paul's pension plan equally. Finally, Hallock testified that "the early retirement subsidy offered under the terms of the Merck Pension Plan was a valuable benefit, which was earned, in part, during the period of the marriage."[3]

[¶ 6] Peter Carmichael, a financial advisor, also testified at the hearing. He testified that he had been hired by Judith prior to the divorce to place a value on the marital component of Paul's pension plan with Merck. He testified that his original valuation of $86,010 was an accurate valuation of Paul's interest in the pension plan at the time of the divorce. He explained that he arrived at this value by calculating "the present value of a future stream of benefits to be received by [Paul]." He added that he had never been asked "whether [Judith] could receive an immediate lump sum distribution from the Plan." Carmichael also testified regarding the early retirement subsidy. He stated that he had placed "no value" on the subsidy because, at the time of the divorce, Paul was not yet eligible for an early retirement subsidy.

[¶ 7] The final witness to testify was Paul's expert, Michael Gallagher. He tes-

tified that the divorce judgment did not specify when Judith was to receive her share of the pension plan, and that the judgment "was not meant to provide for a 'lump sum' transfer to [Judith]." He added that it was possible to draft a QDRO that would provide Judith with a $43,005 benefit. Gallagher also addressed the early retirement subsidy. He agreed that Carmichael's valuation had not included any subsidy, and he concluded that because the judgment assigned a specific dollar value to Judith's share of the pension plan, "no portion of the subsidy was meant to be awarded" to Judith.

[¶ 8] The trial court found that the divorce court "intended that an equitable distribution for this particular couple would be to divide up the assets on a fifty-fifty basis" because "[t]he husband's IRA was divided on a fifty-fifty basis" and "[t]here is nothing in the agreement to suggest that anything other than a fifty-fifty division would be equitable and ... the agreement says that all property has been equitably divided." The trial court also held that Judith was entitled to the marital share of any early retirement subsidy Paul might obtain from Merck. Paul moved the court to issue findings of fact and conclusions of law. When the court denied his motion, Paul brought this appeal.

[¶ 9] When a settlement agreement is incorporated into a divorce judgment, the settlement agreement "becomes part of the judgment of the divorce court." *See Murphy v. Murphy,* 1997 ME 103, ¶ 8, 694 A.2d 932, 934. If the divorce judgment is ambiguous, the court "has the inherent and continuing authority to construe and clarify its judgment," *see MacDonald v. MacDonald,* 582 A.2d 976, 977 (Me.1990), but it "cannot under the guise of a clarification order make any material change that will modify the property divi-

---

3. Hallock explained that if Judith were to begin receiving benefits on or after the date Paul began receiving benefits, Merck would interpret the QDRO as giving Judith a propor-
tionate share of Paul's early retirement subsidy. Correspondingly, Paul's benefit from the early retirement subsidy would be reduced.

sion provided by the original judgment," *see Bliss v. Bliss,* 583 A.2d 208, 210 (Me. 1990); *see also Wardwell v. Wardwell,* 458 A.2d 750, 752 (Me.1983) (holding that there is no statutory authority to modify a judgment that divides marital property). In resolving any ambiguity in a divorce judgment, it is the intent of the divorce court, as revealed in the language of the judgment, that controls. *See Wardwell,* 458 A.2d at 752.[4]

[¶ 10]  When we review an order purporting to clarify a divorce judgment, we will affirm that order if "the court's prior judgment was ambiguous as a matter of law ... and ... the court's construction of its prior judgment is consistent with its language read as a whole and is objectively supported by the record." *See Mac-Donald,* 582 A.2d at 977 (citation omitted). At issue in this case is the provision dividing Paul's pension plan. The provision does not state *when* Judith is to receive her $43,005. Because it can be read to require either an immediate lump sum payment or a payment at a later date, the provision is ambiguous as a matter of law. The court found that the intent of the provision was to divide the marital component of the pension plan equally. That interpretation is consistent with the language of the provision and is supported by the record.

[¶ 11]  The parties themselves originally interpreted the provision as calling for a distribution of $43,005, an amount that in fact represented one half of the value of Paul's pension plan at the time of the divorce. The evidence demonstrated that if Judith were forced to wait until Paul's retirement to receive her distribution, then the $43,005 would be worth far less than the 50% of the value of Paul's pension that the court represented it was equal to. Contrary to Paul's contention that the intent was to set aside no more than $43,005 to Judith, such a result would be inconsis-

tent with the reference to 50% of the marital component of the pension and would provide an incentive to Paul to defer payment to Judith, a result that would not be favored. Rather, it is entirely consistent with the language of the judgment that Judith receive 50% of the value of the marital component of the plan, and there is little to indicate that Judith is to receive anything less than 50% of the marital component as calculated at the time of distribution. If the intent were to set aside only $43,005 as opposed to one half of the value of the martial portion of the pension, there would have been little need to mention the 50%. The trial court's conclusion that Judith is entitled to receive 50% of the marital component of the pension plan is consistent with the language of the provision.

[¶ 12]  The trial court, however, also concluded that the provision that divided the Merck pension plan was intended to include and to equally divide Paul's early retirement subsidy. The trial court reasoned that because the divorce court intended to divide all the marital property equally, the marital component of the early retirement subsidy should also be divided equally.

[¶ 13]  It is clear, however, that the early retirement subsidy was not included in the valuation assigned to the pension at the time of the divorce. Peter Carmichael, Judith's expert witness, testified that he had not considered any potential early retirement subsidy when he calculated the value of the pension plan because Paul was not eligible for the subsidy at the time. Paul's expert, Michael Gallagher, agreed that Carmichael's valuation had not included any subsidy and that no portion of the subsidy was meant to be awarded to Judith. This indicates that Judith had knowledge of the early retirement subsidy but did not assert any rights to it in the

4. While it is the court's intent that is controlling, we have considered the intent of the parties to be relevant in determining the

court's intent. *See Cyr v. Cyr,* 469 A.2d 836, 839–40 (Me.1983).

settlement agreement. The trial court itself recognized this in its order, noting that Judith's attorney "missed [the] point" during the divorce when referring to the early retirement benefit. Therefore, the trial court erred in concluding that the intent of the divorce court was to divide the early retirement subsidy equally between the parties. *See Salenius v. Salenius*, 654 A.2d 426, 428–29 (Me.1995) (where wife was aware of husband's pension at the time of divorce, but did not seek division of the pension by the divorce court, she was barred from seeking its division in a later proceeding).

[¶ 14]   Because the divorce court's judgment was not intended to award any part of Paul's early retirement subsidy to Judith, in concluding that Judith was to share equally in that subsidy, the trial court went beyond interpreting and clarifying the divorce judgment and modified that judgment. Such action is beyond the authority of the court unless the court is acting on a motion brought pursuant to M.R. Civ. P. 60(b). *See Cyr v. Cyr*, 469 A.2d 836, 839 (Me.1983).[5] Although Judith did move for relief pursuant to Rule 60(b), the trial court did not rely on its Rule 60(b) authority and did not purport to modify the divorce judgment. Moreover, Judith sought relief on the grounds of mistake, inadvertence, surprise or excusable neglect, grounds set out in Rule 60(b)(1). *See* M.R. Civ. P. 60(b)(1). A motion brought pursuant to Rule 60(b)(1) must be brought within one year of the divorce judgment. *See id.* Because Judith's motion for relief from judgment was filed several years after the divorce judgment became final, the court was without authority to grant the motion. *See id.; see also Salenius*, 654 A.2d at 428.

The entry is:

Judgment affirmed in part and vacated in part. Remanded for further proceedings consistent with this opinion.

---

**5.**  Pursuant to 19–A M.R.S.A. § 953(9) (1998), the court may set aside or divide marital property that is omitted from the divorce judgment. Property considered by the divorce court but not expressly disposed of in its order is not necessarily omitted property, *see Cross v. Cross*, 1999 ME 147, ¶ 5, 739 A.2d 380, 381, and Judith does not contend that the early retirement subsidy is omitted property.