2000 ME 135

**Debra HUGHES**

v.

**Michael MORIN.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 14, 2000.
Decided July 12, 2000.

James A. Mitchell, Butler, Whittier, LaLiberty & Mitchell, P.A., Waterville, for plaintiff.

Robert J. Ringer Jr., Daviau, Jabar & Batten, Waterville, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Michael Morin appeals from the judgment of the Superior Court (Kennebec County, *Atwood, J.*) affirming the judgment of the District Court (Waterville, *French, J.*) construing disputed language in the parties' divorce decree in favor of Debra Hughes, f/k/a Debra Morin, and limiting Michael's share of the equity in their marital home to half the equity the couple had in the property at the time of their divorce. On appeal, he argues that he is entitled to half of the present equity in the property and that it was error for the court to determine otherwise. We affirm.

[¶ 2] The parties were divorced pursuant to a judgment of the District Court (*Studstrup, J.*) dated June 18, 1986. In the judgment, the court provided for the welfare of the couple's child, ordered that neither party would be required to provide the other spousal support, and divided the couple's personal and real property. The original divorce decree provided that the couple's minor child would reside primarily with Hughes in the marital home until such time as Hughes sold it, otherwise forfeited her right to possession, or until the child reached the age of eighteen, whichever came first.

[¶ 3] After the judgment was entered, in response to a motion for relief from judgment pursuant to Rule 60(a) of the Maine Rules of Civil Procedure,[1] the parties agreed and the court amended paragraph # 8 of the judgment to read as follows:

> The family residence and adjoining property on East Pond Road, Oakland, Maine, as more fully described in the Kennebec County Registry of Deeds in Book 1894, Page 305 and in Book 2164, Page 108, are determined to be marital property. The real estate was held in joint tenancy and shall now be changed to tenants in common. The Plaintiff shall have exclusive possession of said property with the minor child, so long as she pays all mortgage, insurance and tax payments. This right will end when the minor child reaches age (18). At such time as the Plaintiff decides not to exercise the right of residence or that right expires, the property shall be sold and the proceeds shall be divided as follows; the current value of the property has been stipulated to be $54,500.00 and the parties' current equity is found to be $32,940.00. It is ordered that the equity is divided equally between the parties with each party receiving fifty percent (50%) of the equity after the expenses of the sale at the time the equity becomes available for distribution.

[¶ 4] After the divorce, Hughes continued to live in the residence and made all of the mortgage, tax and insurance payments. The mortgage payments made by Hughes reduced the mortgage to $9,000. In addition, Hughes spent approximately $40,000 enlarging and improving the home. As a result of these expenditures, in December of 1997, when their child turned eighteen, the property was appraised at $94,000 and the equity in the property had increased to $85,000.

---

1. M.R. Civ. P. 60(a) provides in pertinent part as follows:

   Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

[¶ 5] Hughes believed that paragraph # 8 should be read to mean that on the occurrence of their child's eighteenth birthday Morin was entitled to receive one-half of the equity identified in paragraph # 8, i.e., $16,470 (one-half of $32,940). Accordingly, she obtained financing for that amount and offered it to Morin. Morin rejected the offer and insisted on $42,500 (one-half of the current equity of $85,000). Hughes then filed a motion for post-judgment relief, and the parties filed opposing memoranda in support of their respective positions.

[¶ 6] The District Court interpreted paragraph # 8 to mean that Morin was entitled to one-half of the equity at the time of their divorce. The court concluded that paragraph # 8 stated that the parties' equity was $32,940 and Morin was to receive one-half of that amount after deducting the expenses of sale. This interpretation was affirmed on appeal to the Superior Court. Morin appeals from this judgment and argues that the only reasonable interpretation of the provision is that offered by him.

[¶ 7] Title 19–A, section 953 controls property divisions in divorce actions and provides that the court "shall divide the marital property in proportions the court considers just" after considering all the relevant factors. 19–A M.R.S.A. § 953 (1997).[2] "[T]here is no question that the court has the inherent and continuing authority to construe and clarify its judgment when that judgment is ambiguous."

MacDonald v. MacDonald, 582 A.2d 976, 977 (Me.1990) (citations omitted). The court always has the authority to "make clear the meaning of a prior decree where necessary to guide the conduct of the parties," id. (quoting Randlett v. Randlett, 401 A.2d 1008, 1010 (Me.1979)).[3]

[¶ 8] We apply an objective test to determine whether a court has properly exercised its authority to construe and clarify its own judgment. To uphold the clarifying order of a court, "we must answer the following two questions in the affirmative: (1) whether the court's prior judgment was ambiguous as a matter of law ... and (2) whether the court's construction of its prior judgment is consistent with its language read as a whole and is objectively supported by the record." MacDonald, 582 A.2d at 977 (citations omitted). "In resolving any ambiguity in a divorce judgment, it is the intent of the divorce court, as revealed in the language of the judgment, that controls." Greenwood v. Greenwood, 2000 ME 37, ¶ 9, 746 A.2d 358, 361.[4]

[¶ 9] The first question may properly be answered in the affirmative. At issue in the present case is the meaning of the amended paragraph # 8 that describes how and when the equity in the real property is to be divided. Although the trial court ultimately concluded that Hughes's position was correct and that Morin was entitled only to one-half of the $32,940 minus his share of the expenses of the sale, each party set forth before the trial

2. Pursuant to section 953 the court shall consider all relevant factors, including the following:

    A. The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

    B. The value of the property set aside to each spouse; and

    C. The economic circumstances of each spouse at the time of the division of property is to become effective, including the desirability of awarding the family home or the right to live in the

home for reasonable periods to the spouse having custody of the children.

3. A court may not, however, "under the guise of a clarification order make any material change that will modify the property division provided by the original judgment." Bliss v. Bliss, 583 A.2d 208, 210 (Me.1990).

4. Although the court's intent controls, we have considered the intent of the parties as relevant to determining the intent of the court. See Greenwood, 2000 ME 37, ¶ 9, 746 A.2d at 361 n. 4 (citing Cyr v. Cyr, 469 A.2d 836, 839–40 (Me.1983)).

court a plausible interpretation of the provision. *Cf. Portland Valve, Inc. v. Rockwood Systems Corp.*, 460 A.2d 1383, 1387 (Me.1983) ("Contract language is ambiguous when it is reasonably susceptible of different interpretations.").

[¶ 10] We next determine "whether the court's construction of its prior judgment is consistent with its language read as a whole and is objectively supported by the record." *MacDonald*, 582 A.2d at 977. "When the meaning of ambiguous language used in a judgment is determined by a consideration of the language in context of the judgment, that meaning also becomes a question of law for the court." *Bliss*, 583 A.2d at 210. We review questions of law *de novo. See id.*

[¶ 11] A review of the judgment as a whole demonstrates that the divorce court intended to treat Hughes and Morin equally at the time of the divorce. The parties were ordered to share the parental rights and obligations as to their minor child and neither party was obligated to pay the other spousal support. In addition, the personal property was divided equally, and bank accounts, stocks and retirement plans were awarded to the party in whose name they were held at the time of the divorce. Based on this equal division of all of the other marital property, it is likely that the court also intended to treat the parties equally when it provided for a division of the real property.

[¶ 12] At the time of the divorce, the value of the property was stipulated to be $54,500 and the parties' then "current equity" was found to be $32,940. The court ordered that, although the sale of the property was to be deferred, the equity was to be divided equally between the parties with each party receiving fifty percent (50%) of the equity, after expenses, at the time the equity became available for distribution. While it certainly could have expressed its intent more clearly, the court's effort to calculate the equity that the couple had in the property at the time of the divorce demonstrates its intent that the $32,940 was the amount that was to be divided at the time of the sale. If the court had intended otherwise, the mention of the current equity amount would serve no purpose.

[¶ 13] In addition to its language with respect to the equity, the court's order stated that Hughes and Morin would continue to own the real property as tenants in common. The court added, however, that Hughes was entitled to exclusive possession of the property and that she was solely responsible for the mortgage, insurance and tax payments. Thus, while Morin was to continue to hold half of the legal interest in the property until the property was to be sold, he was freed of all financial obligations with respect to its maintenance.

[¶ 14] When clarifying its order, the court stated that when it divided the real property it had intended to recognize both Morin's investment in the property until the time of the divorce and the financial requirements it had imposed on Hughes to maintain the property after the divorce. Accordingly, while Morin was entitled to receive one-half of the equity in the property that he had been partially responsible for accumulating, i.e., $16,470, Hughes was entitled to any additional equity that accumulated in the property as a result of both her investment in the property and her maintaining the property until their child's eighteenth birthday.[5]

[¶ 15] This interpretation protects both parties' interest in the property. It preserves both Morin's investment in the property before the divorce and Hughes's continued investment in the property after the divorce. Accordingly, the court did not err when it determined that Morin was

---

5. Morin argues that he was deprived of the use of the $16,470 during the period of time that Hughes lived in the home with their child. His argument fails to appreciate, however, that the deprivation he endured was at least partially for the benefit of his child.

entitled to one-half of the equity in the property at the time of the divorce.

The entry is:

Judgment affirmed.