2001 ME 18

**Patricia BLANCHARD et al.**

**v.**

**Maria Rose SAWYER et al.**

**Docket No. PEN–00–302.**

Supreme Judicial Court of Maine.

Argued Nov. 7, 2000.
Decided Jan. 25, 2001.

Philip R. Foster, Esq., (orally), Foster Law Offices, Ellsworth, for plaintiffs.

J. Hilary Billings, Esq., (orally), Billings & Silverstein, Bangor, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Patricia Blanchard and Hazen Gray Blanchard appeal from a judgment entered in the Superior Court (Penobscot County, *Marsano, J.*) affirming a judgment entered in the District Court (Newport, *Gunther, J.*) that the 1994 judgment divorcing Patricia Blanchard and Malcolm Sawyer (Newport, *Hjelm, J.*) unambiguously allowed Malcolm to change beneficiaries on his life insurance policies, and allowed his estate to demand a release deed for certain real estate from the Blanchards. We affirm the judgment.

[¶ 2] In 1994, Patricia Blanchard (at the time, Patricia Sawyer) and Malcolm Sawyer obtained a divorce judgment incorporating an agreement of the parties. The judgment required Malcolm to maintain his life insurance policies [1] "presently in existence and which insure[ ] his life for the benefit of Plaintiff and/or the daughter of the parties." In addition, the judgment

---

1. Although the original divorce judgment refers to a single policy, the parties do not dispute that the court and the parties intended that the clause apply to three policies. The judgment of the District Court (*Gunther, J.*) listed all three policies.

required Patricia to deliver a release deed to certain real estate held in joint tenancy with Malcolm, after Malcolm paid her $15,000 on a specified schedule and paid off certain marital debts or the creditors released Patricia from her obligations on those debts. Before he died, Malcolm changed the beneficiary on his life insurance policies from Patricia to their daughter, Deanna Sawyer. Patricia, as the surviving joint tenant, deeded the real estate to herself and her new husband.

[¶ 3] Malcolm's estate moved for contempt, enforcement or amendment of the divorce judgment and sought a judgment directing the Blanchards to execute a release deed. The Blanchards then commenced a declaratory judgment action against the estate and Deanna to obtain a determination of the meaning of the life insurance and real estate provisions of the divorce judgment. In its consolidated order, the court entered a judgment in favor of Deanna with respect to the life insurance benefits, and in favor of the estate concerning its right to demand a release deed. The Superior Court affirmed and this appeal followed.

[¶ 4] "When a settlement agreement is incorporated into a divorce judgment, the settlement agreement 'becomes part of the judgment of the divorce court.'" *Greenwood v. Greenwood*, 2000 ME 37, ¶ 9, 746 A.2d 358, 360 (quoting *Murphy v. Murphy*, 1997 ME 103, ¶ 8, 694 A.2d 932, 934). "In resolving any ambiguity in a divorce judgment, it is the intent of the divorce court, as revealed in the language of the judgment, that controls." *Greenwood*, 2000 ME 37, ¶ 9, 746 A.2d at 361 (citing *Wardwell v. Wardwell*, 458 A.2d 750, 752 (Me.1983)). The language of a judgment is ambiguous where it is "reasonably susceptible of different interpretations." *Hughes v. Morin*, 2000 ME 135, ¶ 9, 755 A.2d 513, 516 (quoting *Portland*

*Valve, Inc. v. Rockwood Systems Corp.*, 460 A.2d 1383, 1387 (Me.1983)).

[¶ 5] "A court's construction of a divorce decree, like any judgment, must be consistent with the language read as a whole and objectively supported by the record." *Glew v. Glew*, 1999 ME 114, ¶ 5, 734 A.2d 676, 679 (quoting *Murphy*, 1997 ME 103, ¶ 8, 694 A.2d at 934). "When the meaning of ambiguous language used in a judgment is determined by a consideration of the language in context of the judgment, that meaning ... becomes a question of law for the court." *Hughes*, 2000 ME 135, ¶ 10, 755 A.2d at 516 (quoting *Bliss v. Bliss*, 583 A.2d 208, 210 (Me.1990)). We "review questions of law de novo." *Royal Ins. Co. v. Pinette*, 2000 ME 155, ¶ 4, 756 A.2d 520, 523. When the meaning may only be gleaned by examining extrinsic evidence, however, the finder of fact determines the meaning based on the evidence presented. *See Glew*, 1999 ME 114, ¶ 7, 734 A.2d 676.

[¶ 6] The divorce judgment provides: "Defendant is Ordered to maintain the Prudential Life Insurance polic[ies] presently in existence and which insure[ ] his life for the benefit of Plaintiff and/or the daughter of the parties." We conclude that the life insurance provision in the divorce judgment is ambiguous because there are two reasonable interpretations of the language. One interpretation would provide that each policy "presently in existence" as of the date of judgment must be maintained, as is, insuring the benefit of Patricia Blanchard, Deanna Sawyer, or both, as each policy provided at the time of judgment. The other interpretation would require only that Malcolm Sawyer maintain each life insurance policy and list (at his option) Patricia Blanchard, Deanna Sawyer, or both as beneficiary.

[¶ 7] Because the life insurance clause stands alone, the judgment itself does not reveal the court's intent. The resolution of the matter is, therefore, a question of fact for the trier of fact. An appellate court may review factual findings of a lower court only for clear error. *See KeyBank Nat'l Ass'n v. Sargent*, 2000 ME 153, ¶ 35, 758 A.2d 528, 537; *Westleigh v. Conger*, 2000 ME 134, ¶ 7, 755 A.2d 518, 519–20. The District Court found that, even if it had concluded that the judgment was ambiguous and had taken into account the witnesses' testimony, it still would have decided in Deanna's favor. That finding by the court does not constitute clear error because the record reasonably supports the court's finding.[2] We conclude, therefore, that although it was error for the court to conclude that the judgment was unambiguous, the court's factual finding supports its order that the divorce judgment gave Malcolm the power to change the beneficiary from Patricia to Deanna.

[¶ 8] As to the real estate in question, the divorce judgment provides:

> The Court orders that said real estate shall continue to be held as joint tenants by the parties, provided, however, that the Defendant, MALCOLM G. SAWYER, shall pay to the Plaintiff, PATRICIA A. SAWYER [now Patricia Blanchard], the total sum of FIFTEEN THOUSAND DOLLARS ($15,000.00) within thirty-six (36) months of the date of this judgment.... Upon payment of all sums due, and evidence that all marital debts accruing prior to this judgment in which Plaintiff is an obligor are paid (or Plaintiff's liability thereunder is released by said creditor), Plaintiff shall

execute a release deed to Defendant of her right, title and interest in said premises.

The court was correct in its determination that, because the death of a joint tenant does not alter the survivor's obligation pursuant to the divorce judgment, Malcolm's death did not alter Patricia's obligation to provide a release deed. *See Fitzgerald v. Trueworthy*, 476 A.2d 183, 185–86 (Me.1984) (holding, where judgment was silent as to rights of survivorship, that ex-husband's death did not alter *in personam* obligation of wife to sell house and divide proceeds pursuant to divorce judgment). The language of the judgment itself reveals an intent to use the continuing joint tenancy to secure Patricia against creditors and against any nonpayment of the $15,000 that Malcolm owed. Because the estate has satisfied Malcolm's obligations to pay Patricia $15,000 and to satisfy the marital debts, the Blanchards must deliver a release deed.

The entry is:

Judgment affirmed.

WATHEN, C.J., dissenting.

[¶ 9] I respectfully dissent with respect to the life insurance benefits. In my judgment, the divorce decree unambiguously required Malcolm Sawyer to maintain the life insurance policies as they were presently in existence at the time of the divorce. The judgment provides that Malcolm must "maintain the Prudential Life Insurance polic[ies] presently in existence and which insure[ ] his life for the benefit of Plaintiff and/or the daughter of the parties." The court concludes that this language is reasonably susceptible to

---

2. The parties stipulated that at the time of the divorce Patricia Blanchard was the sole beneficiary under all three policies. The divorce judgment made no provision for alimony or any unsecured continuing benefit. Malcolm's attorney testified that it was his understanding that both Patricia and Malcolm wanted to take care of Deanna and that the language of the policy allowed Malcolm to designate Deanna a beneficiary.

the interpretation that Malcolm had the discretion to designate Patricia Blanchard, Deanna Sawyer, or both as beneficiary. This interpretation, however, is not supported by the language of the judgment.

[¶ 10] The single sentence in question has as its direct object the life insurance policies that were "presently in existence." The remainder of the sentence describes the policies as those "which insure[ Malcolm's] life for the benefit of Plaintiff and/or the daughter of the parties." The use of the present tense of the verb "insure" confirms unambiguously that the policies that Malcolm must maintain are those which presently insure his life for the benefit of Patricia, Deanna, or both. The phrase "for the benefit of Plaintiff and/or the daughter of the parties" is not a grant of discretion to Malcolm to select a beneficiary but is, rather, a description of the life insurance policies that were then in existence. Accordingly, I would vacate that portion of the Superior Court's judgment dealing with the life insurance proceeds.