2002 ME 152

**Stephen AUSTIN**

v.

**Valerie AUSTIN.**

Supreme Judicial Court of Maine.

Argued: June 12, 2002.

Decided: Sept. 18, 2002.

Robert A. Laskoff, (orally), Laskoff & Associates, Lewiston, for plaintiff.

Coleman G. Coyne Jr, (orally), Lewiston, for defendant.

Panel: CLIFFORD, RUDMAN, DANA, and LEVY, JJ.

LEVY, J.

[¶ 1] Valerie Austin appeals from the judgment of the Superior Court (Androscoggin County, *Gorman, J.*) denying her post-divorce motion for contempt and finding that Stephen Austin is not required to pay the school tuition for the parties' two minor children, William and Jonathan. Valerie asserts that the court erred when it construed the parties' divorce judgment as requiring Stephen to pay all of William's private school tuition, tutor, and counseling, and half of Jonathan's educational expenses only if Stephen agrees to do so, and when it ordered her to pay Stephen's attorney fees. We agree and vacate the order.

## I. FACTS

[¶ 2] Valerie and Stephen Austin have two children: William B. Austin, born September 17, 1989, and Jonathan B. Austin, born July 10, 1991. In early 1995 the parties separated and Stephen initiated an action for divorce. The parties were granted a divorce by the Superior Court (*Marden, J.*) on September 4, 1998.

[¶ 3] The divorce judgment granted the parties shared parental rights and responsibilities as defined in 19–A M.R.S.A. § 1501(5) (1998).[1] Valerie was awarded the children's primary physical residence and Stephen was awarded the right to visit and be visited by the children. In addition to including the statutory definition of parental rights and responsibilities, the divorce judgment expressly stated that the parties "have been unable to agree to some extent on educational decisions for the children," but that the court believed "that the parties will be able to make appropriate educational decisions as to both children, and such decisions are to be shared by the parties with financial arrangements as ordered herein."

[¶ 4] The financial arrangements referred to are as follows: Stephen "shall be responsible for the private school tuition, tutor and counseling for William, if any, in accordance with the shared parental rights and responsibilities. Any additional educational expenses for Jonathan shall be shared equally by the parties." At the time of the divorce hearing in 1997, William was attending Hebron Academy, a private school, and Jonathan was enrolled in public school. Acknowledging the extraordinary costs of private tuition, tutoring and counseling, the court deviated from the child support guidelines by reducing the amount Stephen was required to pay Valerie in child support each week from $429.95 to $300.

[¶ 5] Since the entry of the divorce judgment in 1998, both William and Jonathan have attended Hebron Academy. The parties have paid for the tuition and related expenses several different ways through a combination of their own funds and the children's funds deposited in uniform transfer to minors accounts. *See* Maine Uniform Transfers to Minors Act, 33 M.R.S.A. §§ 1651–1674 (1999 & Supp.

---

1. Shared parental rights and responsibilities is defined as

   most or all aspects of a child's welfare remain the joint responsibility and right of both parents, so that both parents retain equal parental rights and responsibilities, and both parents confer and make joint decisions regarding the child's welfare. Matters pertaining to the child's welfare include, but are not limited to, education, religious upbringing, medical, dental and mental health care, travel arrangements, child care arrangements and residence. Parents who share parental rights and responsibilities shall keep one another informed of any major changes affecting the child's welfare and shall consult in advance to the extent practicable on decisions related to the child's welfare.

   19–A M.R.S.A. § 1501(5).

2001). In late August 2001, Valerie paid all of the children's private school expenses for the 2001–2002 academic year with her own funds after Stephen refused to pay his share on the ground that he did not agree to continue to send the children to Hebron Academy.

[¶ 6] Earlier in August of 2001, a hearing was conducted by the Superior Court (*Gorman, J.*) on a motion that Stephen had previously filed to modify the divorce judgment regarding his parent-child contact schedule. At the hearing, Stephen testified that he took an active role in the children's education and regularly visited them at Hebron Academy during their lunch hour. The hearing resulted in the entry of an order granting Stephen an expanded schedule of parent-child contact. At no time during this hearing did Stephen inform the court that he objected to the children's continued attendance at Hebron Academy or that he would refuse to pay the tuition bill due for the 2001–2002 academic year, that was to commence in a matter of several weeks.

[¶ 7] In September 2001, Valerie brought a contempt motion against Stephen for failing to pay his share of the private school expenses as ordered in the divorce judgment. At the contempt hearing held in January 2002, Stephen testified that he never agreed to send the children to Hebron Academy but rather had merely "accepted" and "resigned" himself to the idea through the years; therefore, he concluded that Valerie should be responsible for both William and Jonathan's Hebron Academy expenses for the 2001–2002 academic year because he did not agree to the same.[2]

[¶ 8] When the Superior Court issued its judgment on Valerie's contempt motion, it addressed the parties' August 2001 testimony and stated that after the August hearing it "mistakenly believed that the parties agreed that Hebron was an appropriate place for their children" because during the hearing neither party indicated that "the children's attendance at Hebron was in dispute." After finding that the award of shared parental rights and responsibilities required the parties to confer and make joint decisions regarding the children's education, the court determined that because Valerie made a unilateral decision to continue to send the children to Hebron in September 2001 to which Stephen did not agree, Stephen was not required to pay the expenses and was not in contempt.

[¶ 9] In addition to finding that Stephen was not in contempt for his refusal to pay his share of the 2001–2002 educational expenses, the court addressed the parties' related disagreement regarding the use of the children's uniform transfer to minors accounts to pay the Hebron tuition. Acknowledging the crisis that had arisen when Valerie received a letter from Hebron Academy indicating that the children could not return to the school unless pay-

---

**2.** When Stephen was asked at the hearing whether he had any discussions with Valerie regarding where the children would attend school for the 2001–2002 academic year, he responded, "No." Although there was no meaningful communication with Valerie on this issue, Stephen testified that in April 2001 they did discuss how the Hebron Academy tuition would be paid:

> I told her again how I felt about it. I told her I didn't feel that Hebron was the right place for the boys, but basically I told her "Valerie, I know you're going to bring the kids there. I know they're going to Hebron. It doesn't matter what I think. You bring them there every year. It doesn't have anything to do with me, and so I know they're going there. I don't agree with it, but can't we at least resolve how we're going to pay for this so we don't go right into the school year and have a big mess?"

ment was received, and Stephen refused to pay his share of the 2001–2002 educational expenses, the court ordered that if Valerie agreed to continue to use the children's uniform transfer to minors accounts to pay their educational expenses, she "shall so notify [Stephen], in writing, within thirty (30) days. [Stephen] shall then make the necessary arrangements to have [Valerie] reimbursed" for the fees she paid to Hebron Academy. The order also stated that if Valerie agreed to use the accounts to pay the 2001–2002 tuition, it would be "precedent for the future."

[¶ 10] The court also ordered Valerie to pay Stephen's attorney fees, stating that the parties' August testimony confirmed "this court's earlier impression that sharing parental rights has not yet been possible" and "[u]nless significant improvements occur soon, it may be necessary to order the parties to attend regular, perhaps even weekly mediation sessions to work out day-to-day decisions," and the parties would share the costs equally or they would "be borne by the party more responsible for the ongoing conflict."

[¶ 11] Valerie appeals from the court's order denying her motion for contempt and ordering her to pay counsel fees.

## II. ISSUE PRESENTED

[¶ 12] The issue presented is whether Stephen was excused from having to pay the expenses for the 2001–2002 academic year because he did not agree with Valerie's decision to continue the children's enrollment at Hebron Academy.

## III. DISCUSSION

[¶ 13] The divorce judgment addressed the issue of education in four distinct places. First, the judgment notes that "the parties have been unable to agree to some extent on educational decisions for the children" and that "such decisions are to be shared by the parties with financial arrangements as ordered herein." Second, the judgment provides that Stephen "ha[d] been meeting the tuition requirements of the private school" and this was "expected to continue in the future." Third, the judgment states that there was a deviation from the child support guidelines due to the "extraordinary expenses required for tutoring, education and counseling" expenses for William. Fourth, the judgment declares that Stephen "shall be responsible for the private school tuition, tutor, and counseling for William, if any, in accordance with the shared parental rights and responsibilities. Any additional educational expenses for Jonathan shall be shared equally by the parties."

[¶ 14] Read together, these four provisions establish that the divorce judgment contemplated that William would continue to attend Hebron Academy following the divorce. They also establish that if Jonathan, who was not attending Hebron Academy at the time of the divorce hearing, was subsequently enrolled in Hebron Academy or another private school, his educational expenses would be shared equally by the parties. *See Blanchard v. Sawyer*, 2001 ME 18, ¶ 5, 769 A.2d 841, 843 ("A court's construction of a divorce decree, like any judgment, must be consistent with the language read as a whole and objectively supported by the record.") (quoting *Glew v. Glew*, 1999 ME 114, ¶ 5, 734 A.2d 676, 679)).

[¶ 15] In the three academic years immediately following the entry of the divorce judgment, both William and Jonathan attended Hebron Academy, but the parties failed to follow the formula for the payment of the associated expenses established in the divorce judgment. Most importantly, although Stephen testified that there had been "an ongoing disagreement

between Valerie and [himself] since both boys started going to Hebron," he also testified that he had "accepted" and "resigned" himself to the idea that both children would attend Hebron Academy. In view of the provisions of the divorce judgment and the parties' course of conduct over a three-year period following the divorce, it was Stephen, not Valerie, who unilaterally sought to effect change in the children's educational placement by his refusal to contribute toward the 2001–2002 expenses.

[¶ 16] A cornerstone of shared parental rights and responsibilities is the expectation that even though parents do not share a household, they will nonetheless work cooperatively with each other. This is reflected in the criteria for determining the best interest of a child, which include the "capacity of each parent to cooperate or to learn to cooperate in child care" and "[m]ethods for assisting parental cooperation and resolving disputes and each parent's willingness to use those methods." 19–A M.R.S.A. § 1653(3)(I), (J) (1998). Similarly, the definition of shared parental rights and responsibilities includes the expectation that parents shall "keep one another informed of any major changes affecting the child's welfare and [shall] consult in advance to the extent practicable on decisions related to the child's welfare." 19–A M.R.S.A. § 1501(5) (1998). Ideally, parents will confer in advance and reach mutual agreements regarding major decisions affecting their child's welfare. Common sense and experience, however, must also inform the law's expectations for parents. Parenting decisions are often reached by cooperation in the form of one parent acceding to the wishes of the other parent in order to avoid parental stalemate and the negative consequences to the child that can flow from it. Here, that form of cooperation occurred in the years prior to the 2001–2002 academic year when Stephen "accepted" and "resigned" himself to the children's enrollment at Hebron Academy.

[¶ 17] The divorce judgment's award of shared parental rights and responsibilities obligated Stephen to consult in advance with Valerie regarding his desire to discontinue the children's enrollment in Hebron Academy and, absent Valerie's agreement, to either seek a non-judicial method of dispute resolution before bringing the issue to court, or proceed directly to court by the filing of a motion to modify. *See* 19–A M.R.S.A. § 1653(10) (1998) ("Upon the petition of one or both of the parents, an order for parental rights and responsibilities with respect to a minor child may be modified or terminated as circumstances require."). Stephen had the opportunity to bring this issue to Valerie's and the court's attention when he testified in August 2001 but, for reasons unexplained by the record and Stephen's brief on appeal, he failed to do so.

[¶ 18] Stephen's right and responsibility to share parental decision-making regarding the children's education does not grant him license to unilaterally absolve himself of his responsibility to contribute to the children's educational expenses by announcing, on the eve of the new school term, that he no longer agreed to the children's established educational placement. Having failed to confer with Valerie regarding his desire to change the children's educational placement beginning in September 2001, to seek some form of alternative dispute resolution and, ultimately, to present the issue to the court as part of his motion to modify heard in August 2001, Stephen failed in his responsibility to share parental decision-making with Valerie. Accordingly, because we conclude that the court misconstrued the judgment's provisions governing Stephen's

parental rights and responsibilities, we vacate its order and remand for the court's reconsideration of the evidence and the application of the contempt standards set forth in M.R. Civ. P. 66(d)(2)(D).

Therefore, the entry shall be:

Judgment vacated and remanded to the Superior Court for further proceedings in accordance with this opinion which may, at the court's discretion, include the receipt of additional evidence in view of the passage of time.