MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2014 ME 135
Docket:        Sag-14-73
Argued:        November 6, 2014
Decided:       December 4, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, JABAR, and HJELM,
               JJ.

PATRICIA E. BONNER

v.

JEFF D. EMERSON


GORMAN, J.

[¶1]    Jeff D. Emerson appeals from a judgment of the District Court (West Bath, *J.D. Kennedy, J.*) denying Patricia E. Bonner's motions to enforce their divorce judgment and amending, sua sponte, the parties' 2013 divorce judgment.   Emerson argues that the court was without authority to amend the divorce judgment.   Bonner cross-appeals, also challenging the court's authority to amend the divorce judgment.   We vacate and remand for reconsideration.

I.  BACKGROUND

[¶2]  Bonner and Emerson were married on November 30, 1985.   In 2011, Bonner instituted divorce proceedings and, after a protracted period of litigation, the parties engaged in a judicial settlement conference with Judge Kennedy on November 30, 2012.   At the conclusion of that conference, the parties informed the

2

court that they had reached a settlement, and placed the agreement on the record. During the next four months, the parties attempted to draft a complete divorce judgment that reflected their agreement, but were unable to do so. Nonetheless, with the agreement of the parties, Judge Kennedy issued a judgment on March 29, 2013, that he referred to in a separate order as "a partial final judgment divorcing the parties and resolving all non-disputed issues . . . reserving [a] disputed issue for future decision." As will be discussed below, the bifurcation of the judgment and the reservation of the disputed issue have created complications for the parties and for us.

[¶3] Paragraph 10 of the judgment dated March 29, 2013, states:

This Judgment provides that certain specified accounts in the name of either party shall be equally divided. Said division shall be accomplished by an equal division between the parties of each asset held in said account as of the date of this Judgment, to the extent that such division is feasible, so that both parties shall receive a comparable composition of assets and a comparable basis therein. *To the extent that the dollar values in any Raymond James account required to be divided herein changes due to market conditions, the parties shall divide the assets of said account in the same proportion as specified herein.*

(Emphasis added.) In addition, paragraph 12(b) of the judgment governs the payment of tax on certain stock options:

Plaintiff's share of the assets described in paragraphs 5(h),[1] 5(n), and 5(o)[2] shall be *payable* promptly *upon Defendant's exercise and liquidation thereof* and the *amount payable* to Plaintiff shall be one-*half of the value received* by Defendant, *net any Federal and State tax liability created by said receipt*, including but not limited to any tax liability which may previously have been incurred. *The parties shall equally share in the payment of any Federal or State tax when incurred.* Any equalization payment shall be made promptly.

(Emphasis added.)

[¶4]  On June 13, 2013, before the court issued an order resolving the remaining disputes between the parties, Bonner filed a motion for post-judgment relief pursuant to M.R. Civ. P. 120, seeking, inter alia, division of the increase in value of a specific Raymond James investment account.  The divorce judgment had awarded $43,159 from that account to Bonner and the remaining $97,084 to Emerson, resulting in a thirty-one percent share to Bonner and a sixty-nine percent share to Emerson.  Bonner alleged that between November 30, 2012, and the date the account was divided, the account increased in value by $21,098.  Bonner sought equal division of the increase, arguing that result was required by paragraph 10 of the divorce judgment.

---

[1]  The 2013 divorce judgment did not include a paragraph 5(h).  The remaining dispute between the parties concerned, in part, the identification and division of the property that was to be included in that paragraph.  The contents of 5(h), along with other issues in dispute at the time of the 2013 divorce judgment, were ultimately resolved by the parties and incorporated into the amended judgment.

[2]  Paragraph 5 lists property that was awarded to Bonner.  Paragraph 5(n) states: "One-half of the vested portion of the UBS Investment account in the name of Defendant (Aetna shares of common stock and cash) as of 1/1/13."  Paragraph 5(o) states: "One-half of the vested portion, if any, of Aetna Deferred Compensation in the name of Defendant as of 1/1/13."

4

[¶5] Emerson filed a document that comprised both a timely opposition to Bonner's motion, asserting that the division of the increase in value should be proportionate to the underlying division, and his own post-judgment motion pursuant to M.R. Civ. P. 120, seeking enforcement based on proportionate division. Bonner filed an objection to Emerson's motion. Thereafter, the court held two conferences with counsel and, at the conclusion of the September 24, 2013, conference, ordered that the motions be set for hearing within thirty days. The notice of hearing issued as a result of that order set the hearing and notified the parties that all outstanding disputes would be addressed at the hearing.

[¶6] On November 14, 2013, Bonner filed a second post-judgment motion, seeking to enforce Emerson's compliance with portions of the divorce judgment that governed the payment of tax on certain stock options. Bonner argued that her proceeds from sale of the stock options should not be reduced by the taxes the parties had already paid on the stock as a result of their jointly filed 2012 tax return. Emerson filed an opposition to the motion.

[¶7] At the December 6, 2013, hearing, the parties reported to the court that they had finally resolved the issues that had still been disputed at the time the court issued its initial iteration of the divorce judgment. Because they had not, however, resolved the disputes outlined in their post-judgment motions, they presented arguments addressing how the increase in value of the Raymond James investment

account and the allocation of taxes on the stock options should be divided in light of the language of the March 29, 2013, judgment.

[¶8]  On January 24, 2014, the court issued a decision on the motions.  In addressing the language in paragraph 12(b), the court stated that it had "learned" that transactions related to stock options may result in two separate taxable events. The court then found that, although the language of paragraph 12(b) was not ambiguous, the parties had understood the tax implications of the language differently.  Although there was no motion for relief from the judgment pending, *see* M.R. Civ. P. 60(b), the court employed "the applicable body of law relating to a Rule 60(b) motion," denied the parties' competing motions to enforce, and granted "[Bonner's] Motion to Alter or Amend and [Emerson's] Motion to Amend."  Through that order, and in the "amended final" divorce judgment it issued the same day, the court amended paragraph 12(b) of the original divorce judgment to create two formulas for stock-sale dispositions, one for 2013 and one for 2014 and forward.  In addition, "[r]ecognizing that this results in a net reduction in the payout to Ms. Bonner [by] $90,000," the court then amended paragraph 10, thereby requiring the parties to equally divide the increase in value of the Raymond James investment account.  Emerson timely appealed and Bonner cross-appealed.

## II. DISCUSSION

[¶9]  Emerson challenges the court's reliance on Rule 60(b) to amend the judgment, given that neither he nor Bonner ever requested that the court amend the judgment, reopen the evidence, or provide any other form of relief pursuant to Rule 60(b).  We review a trial court's determination of its authority de novo. *Jackson v. MacLeod*, 2014 ME 110, ¶ 19, 100 A.3d 484.

[¶10] "In the absence of statutory authorization to modify a judgment dividing marital property, the courts are without jurisdiction to do so."  *Wardwell v. Wardwell*, 458 A.2d 750, 752 (Me. 1983*).   See also Lewin v. Skehan*, 2012 ME 31, ¶ 26, 39 A.3d 58 ("[C]ourts generally do not have authority to modify a judgment's division of marital property or marital debt."); *Merrill v. Merrill*, 449 A.2d 1120, 1124 (Me. 1982).  A Rule 60(b) motion does allow a trial court to modify a divorce judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

M.R. Civ. P. 60(b). To obtain Rule 60(b) relief, however, a party must invoke Rule 60(b) and allege facts giving rise to one of Rule 60(b)'s specific requirements. *Wardwell*, 458 A.2d at 752-53.

[¶11] In her first post-judgment motion, Bonner relied on Rule 120 to request enforcement of the judgment, claiming that the "plain language" of the divorce judgment required the increase of the Raymond James investment account to be divided equally. Emerson's cross post-judgment motion, which also relied on Rule 120 to request enforcement of the judgment, asserted that the division of the increase in value should reflect the proportionate distribution of the account. Finally, in her second post-judgment motion, Bonner again relied on Rule 120 to request enforcement of the March 29, 2013, judgment. Neither party filed a motion asking that the court change the judgment, and neither party filed a motion that could reasonably be interpreted as requesting relief pursuant to Rule 60(b).

[¶12] A party's motion to enforce a divorce judgment does not give the court the authority to amend or modify the division of marital property in that judgment. *Wardwell*, 458 A.2d at 752. "If the divorce judgment is ambiguous, the court has the inherent and continuing authority to construe and clarify its judgment, but it cannot under the guise of a clarification order make any material change that will modify the property division provided by the original judgment." *Greenwood v. Greenwood*, 2000 ME 37, ¶ 9, 746 A.2d 358 (quotation marks omitted) (citation

omitted).  Whether the court had the authority to do what it did, therefore, depends on whether it clarified, enforced, or amended the judgment.

[¶13]   In order to determine whether the court clarified, enforced, or amended the judgment, we must first determine whether the judgment is ambiguous, and therefore in need of clarification, and must interpret the judgment. "We review de novo whether a provision in a divorce judgment is reasonably susceptible to different interpretations and therefore ambiguous." *Ramsdell v. Worden*, 2011 ME 55, ¶ 17, 17 A.3d 1224.  An ambiguous judgment is one that has at least two *reasonable* interpretations of the language.  *See Blanchard v. Sawyer*, 2001 ME 18, ¶ 6, 769 A.2d 841; *Hughes v. Morin*, 2000 ME 135, ¶ 9, 755 A.2d 513.  "When a judgment is unambiguous, it must be enforced in accordance with the plain meaning of the language in the judgment."  *Burnell v. Burnell*, 2012 ME 24, ¶ 15, 40 A.3d 390 (quotation marks omitted).  With these standards in mind, we review the language of the court's March 29, 2013, divorce judgment in order to determine whether it is "susceptible" to different, reasonable interpretations.

A.    Increase in Value of Raymond James Account

[¶14]   Paragraph 10 discusses two groups of accounts—one group whose value is to be "equally divided," and one group whose value is divided in some other manner.  Any increase in value in the second group of accounts occurring before the actual division is to be divided "in the same proportion as specified

herein." Contrary to Bonner's assertion, the paragraph's language cannot be read to require that, with regard to those accounts that were not to be divided equally, any *increase* in value should be divided equally.

[¶15] The plain language of paragraph 10 requires that the increased value of the Raymond James account at issue in the parties' cross motions for enforcement be divided between the parties in the ratio stated in the judgment: thirty-one percent to Bonner and sixty-nine percent to Emerson. Because the language is unambiguous, the court was required to enforce its plain meaning. It erred in doing otherwise and, therefore, we vacate the amended judgment on this ground and remand for the court to reconsider the parties' post-judgment motions relating to paragraph 10 of the 2013 divorce judgment.

B. Stock Options

[¶16] In her second post-judgment motion, Bonner asked the court to enforce paragraph 12(b) of its divorce judgment as it applied to certain stock transactions. In his response to that motion, during the hearing on the motion, and again to us, Emerson has argued that the plain language of paragraph 12(b) reduces Bonner's portion of the proceeds resulting from the sale of certain stock by both the taxes paid by Bonner and Emerson in their 2012 jointly filed tax return and the taxes incurred in the year of the sale. We agree with this premise, but the result Emerson hopes for does not follow.

[¶17]  The plain language of paragraph 12(b) establishes that Bonner's share of the accounts described in paragraphs 5(n) and 5(o) is one-half of the value of the accounts, less her share—one-half—of any taxes that resulted from the vesting and the liquidation of those accounts.  For these accounts, the first taxable event occurred in 2012, when Emerson's interest in the stock vested.  That event resulted in compensation to Emerson that was taxed to the parties as income.  Because the parties filed a joint tax return in 2012, they both paid the tax imposed at that time.  The second taxable event occurred in 2013, when Emerson—now divorced—sold the stock and realized a capital gain.  Emerson paid the entire capital gains tax that resulted from that event, and Bonner must pay her share—one-half—by having her proceeds reduced by one-half of the capital gains tax paid by Emerson.

[¶18]  Emerson is correct when he argues that the language "including but not limited to any tax liability which may previously have been incurred" reduces Bonner's share by both the capital gains taxes he paid on the sale of the stocks in 2013 and the previously incurred and paid income taxes from 2012 when the stock options vested.  He is incorrect, however, in reading the language of paragraph 12(b) in a manner that requires Bonner to pay the same tax twice.

[¶19]  Emerson's interpretation of paragraph 12(b) is not reasonable because it directly contradicts paragraph 12(b)'s language that the "parties shall equally share in the payment of any Federal or State tax when incurred."  For the property

listed in paragraphs 5(n) and 5(o), Bonner already paid her share of the 2012 income tax. Using Emerson's interpretation, Bonner's share of the marital asset would be reduced a second time by taxes the parties already paid jointly, effectively forcing her to pay the entirety of the compensation portion of the income taxes on the stock options.

[¶20] Because the language of paragraph 12(b) of the 2013 divorce judgment is not ambiguous, and because the court amended paragraph 12(b) without the authority to do so, we must vacate the amended judgment and remand for the court to reconsider Bonner's motion to enforce the plain language of paragraph 12(b) of the 2013 judgment.

[¶21] On remand, the court must interpret the 2013 versions of paragraph 10 and paragraph 12(b) in deciding the parties' post-judgment motions. Because the amended judgment contains improper changes to paragraphs 10 and 12(b), it has been vacated by this opinion. Nonetheless, the March 29, 2013, divorce judgment specifically left some matters undecided, and the court will therefore have to issue a new final judgment. Provisions in the vacated judgment that addressed those remaining disputes, such as paragraph 5(h), and were based on the parties' agreements, should be included in the amended judgment.

[¶22] This divorce without children involved a couple with significant assets and complicated financial properties. Before and after their "settlement,"

the parties flooded the trial court with voluminous filings and frequent requests for conferences and rulings. Given the limited time and resources available to the District Court, the prudent course of action would have been for the parties or the court to request that the case be transferred to the Business and Consumer Docket. On remand, we suggest that such a transfer be considered.

The entry is:

> Judgment vacated. Remanded to the District Court for further proceedings consistent with this opinion.

---

**On the briefs:**

David S. Abramson, Esq., and Jonathan M. Dunitz, Esq., Verrill Dana, LLP, for appellant Jeff D. Emerson

Ronald P. Lebel, Esq., Skelton, Taintor & Abbott, Auburn, for appellee Patricia E. Bonner

**At oral argument:**

Jonathan M. Dunitz, Esq., for appellant Jeff D. Emerson

Ronald P. Lebel, Esq., for appellee Patricia E. Bonner