MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2019 ME 32
Docket:        Yor-18-237
Submitted
  On Briefs:   January 17, 2019
Decided:       March 5, 2019

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

DONALD G. DURKIN

v.

JOYCE L. DURKIN

JABAR, J.

[¶1]  Joyce L. Durkin appeals from a judgment of divorce from Donald G. Durkin entered on Donald's complaint by the District Court (Biddeford, *Foster*, *J.*) and the court's denial of her motion for amended or clarified findings and for reconsideration.  Joyce asserts that the trial court erred by concluding that it lacked the authority to award spousal support from nonmarital assets and by declining to award nominal spousal support.  Although the court does have the authority to consider a spouse's nonmarital assets in determining the appropriateness of spousal support and does have the authority to secure any such spousal support through a lien on nonmarital real property, the court's judgment is unclear as to whether the court believed it had such authority.  We vacate and remand.

# I. BACKGROUND

[¶2]  Donald filed a complaint for divorce in March 2016.  The court held a contested hearing in January 2018 and entered a judgment of divorce on April 10, 2018.  The following facts are from the court's explicit findings, all of which are supported by competent evidence in the record.  *See Douglas v. Douglas*, 2012 ME 67, ¶ 26, 43 A.3d 965.

[¶3]  Donald and Joyce Durkin were married in August 1980.  At the time, Donald was self-employed as a building contractor.  In 1985, Donald constructed a two-family home in Buxton on property owned by his parents for him, Joyce, and his parents to reside in.  Donald personally provided almost all of the labor.  Donald also constructed a beauty salon attached to the home to be operated by Joyce, who had recently graduated from cosmetology school.

[¶4]  In 1991, Joyce gave birth to the parties' son.  Following the son's birth, Joyce began to work less at her beauty salon, which resulted in the business being less profitable.  Later, in 2003, Donald's parents deeded him the Buxton property solely in his name.  Donald and Joyce jointly acquired a small adjacent parcel of land for $10,000, funded through a home equity line of credit of $75,000 that was secured by the Buxton property Donald had received from his parents.  Donald and Joyce used the remainder of the line of credit to pay off

various debts.  At the time of the divorce, Donald and Joyce owed $75,000 on the line of credit.

[¶5]  Due to multiple physical disabilities, Donald closed his contracting business in 2015 and began working as a driver for local car dealerships.  For a period of time, Joyce worked in various other part-time positions until she suffered a serious accident.

[¶6]  Based on these findings, the court set aside the Buxton property to Donald as his nonmarital property.  The court also awarded Donald the adjacent parcel of land, finding that it had no value independent of the larger property.  Further, at Donald's request, the court ordered that he was responsible for almost all of the parties' joint debt.

[¶7]  Joyce requested that the court enter a lump sum spousal support order secured by Donald's nonmarital property.  The court denied this request, stating:

> What skews the picture in this matter is the award of the residence to Mr. Durkin.  The equity in that property is substantial—$320,000.  On its face, the argument by Mrs. Durkin's counsel that the equity in the property presents an opportunity for a lump sum payment of alimony seems fair and feasible.  But it overlooks one crucial fact—the property is [nonmarital]. The [c]ourt cannot force a sale of or loan secured by that asset to create a fund for payment of spousal support to Mrs. Durkin.

4

Joyce filed a motion for amended or clarified findings and for reconsideration, seeking an award of nominal spousal support and reconsideration of the denial of a lump sum spousal support award. *See* M.R. Civ. P. 52(b), 59(e). The court denied the motion, and Joyce timely appealed. *See* M.R. App. P. 2B(c)(2)(B), (D).

## II. DISCUSSION

[¶8] The issue before us is whether the court erred as a matter of law when it concluded that it lacked the authority to force the sale of, or a loan secured by, nonmarital property. We review the court's determination of its authority de novo as a question of law. *Bonner v. Emerson*, 2014 ME 135, ¶ 9, 105 A.3d 1023.

[¶9] Joyce argues that the court erred by stating, as a matter of law, that nonmarital property could not be allocated or set aside to her for purposes of ordering a lump sum payment of spousal support. At other points, Joyce characterizes the court's reasoning as erroneously concluding that it lacked the authority to make such an award from the nonmarital assets. In fact, the actual wording of the court's order was that it could not "force a sale of or loan secured by the [nonmarital asset] to create a fund for the payment of spousal support." It is not clear from this language whether the court refused to consider the value of Donald's nonmarital property in determining whether to award

spousal support or whether the court believed it lacked the authority to order that any lump sum spousal support award be secured by Donald's nonmarital property.

[¶10]  In determining whether an award of spousal support is appropriate, the court has significant discretion in both "whether and in what amount to award spousal support," *Jandreau v. LaChance*, 2015 ME 66, ¶ 15, 116 A.3d 1273, with the bounds of that discretion defined by factors set forth in 19-A M.R.S. § 951-A(5) (2018).  As part of this determination, the court must consider not only each spouse's current income, but also each spouse's total financial resources, including nonmarital assets.  *See* 19-A M.R.S. § 951-A(5)(B), (P)(1), (Q); *Smith v. Smith*, 419 A.2d 1035, 1039 (Me. 1980).

[¶11]  Recognizing this, in *Miliano v. Miliano* we explained that a "court has considerable authority to order spousal support in a manner that reflect[s] the parties' contributions to the marriage, and to provide reimbursement as appropriate."  2012 ME 100, ¶ 28, 50 A.3d 534.  There, because we could not discern the court's intent in awarding a lower amount of spousal support given the way it allocated real property, we remanded the case for clarification.  *Id.* ¶¶ 27-28.  Importantly, we stated that "if it deems it necessary, *the court is empowered to impose a lien on the nonmarital property* set aside to [the

husband] to ensure compliance with its spousal support award to [the wife]."
*Id.* ¶ 29 (emphasis added); *see also* 19-A M.R.S. § 951-A(6), (7) (2018); *Booth v. Booth*, 640 A.2d 1063, 1065 (Me. 1994) ("[A] Maine divorce court has the authority to impose a lien to enforce the remedies granted pursuant to a divorce judgment.").

[¶12] Here, in considering whether or not to award spousal support, the court properly considered the length of the marriage, the age of the parties, the income history and income potential of the parties, and the contributions of Joyce as a homemaker. *See* 19-A M.R.S. § 951-A(5). The court further acknowledged that Donald had nonmarital property with substantial equity ($320,000), but was also saddled with virtually all of the parties' debt ($117,900). With regard to Joyce's request that the court award lump sum spousal support secured by that property, the court stated that, "[on] its face, the argument by [Joyce] that the equity in the property presents an opportunity for a lump sum payment of alimony seems *fair and feasible*, [b]ut it overlooks one crucial fact—the property is [nonmarital]. The [c]ourt cannot force a sale of or a loan secured by that asset to create a fund for payment of spousal support to [Joyce]." (emphasis added).

[¶13] This statement by the court is problematic because the court is allowed to, and should, consider Donald's nonmarital assets as a factor in ascertaining whether spousal support is warranted. *See* 19-A M.R.S. § 951-A(5)(B), (P)(1), (Q); *Smith*, 419 A.2d at 1039. If the court determines that spousal support is appropriate, then the court could order a lump sum payment secured by a lien on Donald's nonmarital real property. *See* 19-A M.R.S. § 951-A(3), (6), (7) (2018); *Booth*, 640 A.2d at 1065 (stating that a divorce court has the authority to impose a lien on real property located within Maine to enforce a spousal support order). From the court's language in its order, it appears that the court erred in its legal analysis regarding its ability to consider nonmarital property in determining whether to award spousal support, and also in its ability to fashion a remedy to enforce any such award.

[¶14] The facts establish that Donald's nonmarital real property has a value of $320,000. On remand, the court should consider this value along with the other factors—including the allocation of debt—that the court considered in determining whether Joyce is entitled to spousal support. *See* 19-A M.R.S. § 951-A(5). If the court determines that an award of lump sum spousal support is warranted, then it may consider whether any such spousal support order

8

should be secured by a lien on Donald's nonmarital real property.  *See Booth*,

640 A.2d at 1065.

The entry is:
> Judgment vacated.  Remanded for clarification of the court's analysis and conclusions, and for reconsideration as deemed necessary.

---

Dana E. Prescott, Esq., Prescott Jamieson Murphy Law Group, LLC, Saco, for appellant Joyce L. Durkin

Benjamin P. Campo, Jr., Esq., Douglas McDaniel & Campo LLC PA, Westbrook, for appellee Donald G. Durkin

Biddeford District Court docket number FM-2016-124
FOR CLERK REFERENCE ONLY