2005 ME 19

**Claudia LOWD**

v.

**Antonios DIMOULAS.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 8, 2004.

Decided: Jan. 28, 2005.

Claudia Lowd, Orono, for plaintiff.

Stephen C. Smith, Smith Law Offices, P.A., Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Antonios Dimoulas appeals from a judgment of divorce and child support entered in the District Court (Bangor, *Russell, J.*) contending that the court erred in (1) deviating from a partial property distribution agreement; (2) granting primary residence for the parties' children to Claudia Lowd; (3) calculating the parties' income for child support; and (4) deviating from a visitation agreement. Because we agree with Dimoulas's first contention, we vacate the judgment and remand for further hearing. Regarding his remaining contentions, the court did not err in its allocation of parental rights and responsibilities, *see Costa v. Vogel*, 2001 ME 131, ¶ 4, 777 A.2d 827, 828, there was no agreement regarding visitation, and the court did not err in calculating the parties' income, *see Lee v. Maier, Jr.*, 1999 ME 62, ¶ 6, 728 A.2d 154, 156.

## I. BACKGROUND

[¶ 2] In early 2003, Claudia Lowd and Antonios Dimoulas filed for divorce based on irreconcilable marital differences. At trial, the parties testified that they had agreed to sell a property on Hammond Street in Bangor, and divide the proceeds. The court found that the property was worth $310,000 and was subject to a $250,000 mortgage. The parties had not agreed to the distribution of their remaining property, which included other real estate as well as personal property.

[¶ 3] The court acknowledged that the parties had asserted an agreement about the distribution of the Hammond Street property. The court recognized that courts are cautioned not to deviate from such agreements. It found, however, that the agreement only dealt with a single piece of property, complicating the remainder of the division. It also found "that the sale of [the] property and the management of the property pending sale would likely cause further friction and disputes between the parties." As a result, the court chose to deviate from the agreement by allocating the Hammond Street property exclusively to Lowd. This timely appeal followed.

[¶ 4] While this appeal was pending Dimoulas filed a motion for remand, which we granted. A motion to correct the record and for reconsideration ensued. The only notice that the court gave the parties that it had not accepted their agreement was in the judgment. Dimoulas argued that the property housing his business and allocated exclusively to him, the Market Café, was additional security for the mortgage on the Hammond Street property. He further contended that Lowd had failed to pay the debt secured by this mortgage,

resulting in the foreclosure of the Market Café property. Because the trial judge had since retired and the court could not revise the judgment without rehearing the entire case, the motion to correct the record and for reconsideration was denied.

## II. DISCUSSION

■ [¶ 5] We have recently held that "[t]here is no question that the divorce court has the authority to determine whether to reject a divorce settlement agreement." *Thorne v. Leask,* 2004 ME 145, ¶ 7, 861 A.2d 690, 691 (citing Levy, *Maine Family Law: Divorce, Separation and Annulment* § 10.2 at 343–44 (2000 ed. 1999)). "If the divorce court rejects any portion of the agreement, however, the parties must be afforded an opportunity to be heard on those matters that have returned to disputed status." *Thorne,* 2004 ME 145, ¶ 8, 861 A.2d at 691 (citing *Shaw v. Shaw,* 2003 ME 153, ¶ 12 & n. 4, 839 A.2d 714, 717; *Cloutier v. Cloutier,* 2003 ME 4, ¶¶ 12–14, 814 A.2d 979, 983–84).

[¶ 6] That there was only a partial divorce settlement agreement in this case is of no moment. We have previously applied this rule to partial divorce settlement agreements. *See Shaw,* 2003 ME 153, ¶¶ 2, 10–12, 839 A.2d at 714, 716–17 (vacating a deviation from a partial agreement leaving child support, allocation of debt, division of pensions, spousal support, and attorney fees in dispute); *Cloutier,* 2003 ME 4, ¶¶ 4, 13–14, 814 A.2d at 981, 983–84 (affirming a deviation from a partial agreement that left in dispute the allocation of pension benefits, personal property, debt, and medical insurance coverage because the court had ample reason to set aside the agreement and had given the parties notice and an opportunity to present additional evidence at a subsequent hearing).

■ [¶ 7] In deviating from the agreement the court was attempting to remove the parties from each other's financial affairs. We have held that "courts should avoid judgments that provide lingering connections between two parties who obviously wish to sever their ties." *Shaw,* 2003 ME 153, ¶ 12 n. 4, 839 A.2d at 717 (citations and quotation marks omitted). If Dimoulas's post-appeal contentions have any merit, however, the effect of deviating from the agreement without offering the parties an opportunity to present additional evidence has been to further entangle the parties.

[¶ 8] When the court found that the parties had an agreement relating to the distribution of the Hammond Street property, it was obliged to notify the parties of its intent to deviate from it and provide them with an opportunity to present additional evidence. *See Shaw,* 2003 ME 153, ¶ 12, 839 A.2d at 717. Because it failed to do so, we vacate the judgment.

The entry is:

Judgment vacated. Remanded to the District Court for further proceedings consistent with this opinion.