2011 ME 14

**Jan M. CORCORAN**

v.

**Linda MARIE.**

Supreme Judicial Court of Maine.

Argued: Sept. 15, 2010.
Decided: Jan. 20, 2011.

Peter B. Bickerman, Esq. (orally), Readfield, ME, for Jan Corcoran.

Nathan D. Bell, Esq. (orally), Unity, ME, for Linda Marie.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR.

Majority: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Dissenting: JABAR, J.

LEVY, J.

[¶ 1] Jan M. Corcoran appeals from a judgment entered in the District Court (Augusta, *French, J.*) granting a motion to enforce spousal support filed by his former wife, Linda Marie. Corcoran argues that the court erred in amending the spousal support agreement as part of its enforcement order. We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] Corcoran and Marie were divorced in an uncontested proceeding in August 2007, after four years of marriage. The divorce judgment (*Worth, J.*) incorporated a spousal support agreement that Corcoran and Marie had drafted without the assistance of counsel, and also separately stated that it was awarding both transitional and general spousal support. *See* 19-A M.R.S. § 951-A(2)(A), (B) (2010). The agreement provided that Corcoran would pay Marie $2200 by June 2008, and that thereafter he would pay Marie "$160 per month or as needed to meet the deficit of her basic living expenses ... until [her] circumstances allow her to assume all of her basic living expenses."[1] The record reflects that Corcoran paid the $2200 and has paid Marie $160 per month since June 2008 as required by the divorce judgment.

[¶ 3] In March 2008, Corcoran moved for relief from the divorce judgment, and in June separately moved to modify it. The court (*Mullen, J.*) denied both motions. In May 2009, Marie moved for contempt, and in July separately moved to enforce the spousal support agreement. Both of Marie's motions asserted that because Corcoran had not provided her with sufficient funds to cover the deficit resulting from the difference between her income and her living expenses, he was in violation of the divorce judgment.

[¶ 4] After a hearing, the court (*French, J.*) denied Marie's motion for contempt, concluding that although Marie had repeatedly requested Corcoran to provide her with additional financial assistance beyond $160 per month, she had failed to provide Corcoran with an accounting to establish the added financial support she needed. Thus, the court reasoned, Corcoran had not acted contumaciously by failing to pay any amounts greater than

1. The agreement stated in its entirety:
   This document is to provide a written contract between Linda Marie Corcoran and Jan Corcoran for purposes of maintaining and providing financial means to Linda to meet her basic living expenses.
   We have agreed that Jan Corcoran will make up the deficit of Linda's income to meet aforementioned expenses in the following manner. Jan will pay approximately $2200 to begin on or about February 2008 to be completed by June 2008. Thereafter, Jan will provide $160 per month or as needed to meet the deficit of her basic living expenses. This provision will remain in effect until Linda's circumstances allow her to assume all of her basic living expenses. We would prefer that this would be a personal exchange rather than through the court. We will be setting up an automatic transfer between the banks involved.
   Linda will remain as the beneficiary on Jan's life insurance policy and will make arrangements to cover funeral expenses in case Jan precedes Linda.

the $160 per month specified in the judgment.

[¶ 5] With regard to the motion to enforce, the court construed the divorce judgment as establishing $160 per month support as a minimum amount, and that its underlying intent was for Corcoran to pay Marie whatever greater amount was required to enable her to meet her basic living expenses. The court observed, "Unfortunately, the agreement is silent regarding the method of accounting for those expenses or the procedure through which [Corcoran] is to be informed of the accounting before the payment is due." The court concluded that it was necessary to amend the divorce judgment under the authority of M.R. Civ. P. 110A(b)(6)(B),[2] to define "basic living expenses":

> The Court finds that [Marie's] basic living expenses include: mortgage and home insurance costs, property taxes, heating oil, electricity, telephone service, water, sewer, trash, clothing, groceries, automobile maintenance and insurance, propane, and gasoline.... The Court finds that the "deficit" between the base spousal support obligation and [Marie's] ability to meet her basic living expenses is between $650 and $750 per month or $160 per week deficit.

[¶ 6] The court determined that the weekly deficit resulted in an arrearage of more than $16,000, but noted Marie's testimony that she would "accept" a payment of $12,101.63. The court therefore granted judgment to Marie in that amount, plus costs and post-judgment interest, and it also ordered Corcoran to pay Marie's 2008 property taxes, including late fees and interest.

[¶ 7] In addition, the court amended the spousal support obligation prospectively, increasing it from $160 per month to $200 per week. The court also established an extra-judicial mechanism for automatically adjusting the amount of spousal support Corcoran would be required to pay. Marie was ordered to provide Corcoran a written budget annually showing her income and expenses for the preceding year, and Corcoran was ordered to pay any resulting deficit indicated by that budget during the ensuing year by way of weekly payments. The court explained:

> [I]t is necessary to amend the Divorce Judgment to achieve its stated purpose of "providing financial means to [Marie] to meet her basic living expenses." *See* M.R. Civ. P. 110A(b)(6)(B) ("Relief on a motion to enforce may include amendment of a judgment or order *if such is necessary to achieve the purposes of the judgment* or order." (emphasis added)).

[¶ 8] Corcoran filed a motion for a new trial and a motion for findings of fact and conclusions of law in response to the Court's enforcement order. Regarding the motion for a new trial, the court rejected Corcoran's claim that he had been denied due process because he had not known that the court was going to modify his support obligation and was thus not afforded an opportunity to present evidence related to his income, debts, living expenses, and other factors specified in 19–A M.R.S. § 951–A(5) (2010). The court

2. M.R. Civ. P. 110A provides the "Prehearing Schedule and Procedure for Cases Involving Minor Children." Section 110A(b)(6)(B) states:

A motion to enforce a judgment or order shall be addressed in a timely fashion and shall not be included in the case management process. The motion shall be referred to a judge who may refer the motion to mediation, or may refer the action for prompt scheduling of a hearing before a judicial officer. Relief on a motion to enforce may include amendment of a judgment or order if such is necessary to achieve the purposes of the judgment or order.

reasoned that its order had *amended* the divorce judgment so as to clarify the meaning of "basic living expenses" and that, by so doing, had not *modified* the divorce judgment.

[¶ 9] In response to Corcoran's motion for findings of fact and conclusions of law, the court revised a portion of the language in its order that is not pertinent to this appeal, but otherwise denied the motion.

## II. DISCUSSION

[¶ 10] Corcoran contends that the court erred by effectively modifying the divorce judgment's spousal support provision without having made a finding of a substantial change in circumstances and without having considered his ability to pay the increase from $160 per month to $200 per week in spousal support. *See* 19–A M.R.S. § 951–A(4) (2010); *Pettinelli v. Yost*, 2007 ME 121, ¶ 14, 930 A.2d 1074, 1079; *Spencer v. Spencer*, 1998 ME 252, ¶¶ 12, 17, 720 A.2d 1159, 1162–63. Because the court did not purport to modify the divorce judgment, however, the question we must answer is whether the court acted within the bounds of its inherent authority to clarify an ambiguous provision in the divorce judgment.

[¶ 11] The court held that a clarifying amendment was required because "[t]he Divorce Judgment was silent regarding the method by which the Plaintiff and Defendant would compute the 'deficit' between the $160 in spousal support and Defendant's ability to meet her basic living expenses." The court amended the judgment by defining "basic living expenses," and establishing a means for the automatic adjustment of the amount of spousal support exclusively based on a budget pre-

pared by Marie. It also determined that there was a substantial arrearage in spousal support based on the retroactive application of the definition and adjustment mechanism established by the court's amendment.[3]

[¶ 12] A judgment may be clarified where it is demonstrated that it contains an ambiguity that is "reasonably susceptible of different interpretations." *Thompson v. Rothman*, 2002 ME 39, ¶ 9, 791 A.2d 921, 924 (quotation marks omitted); *see also Bliss v. Bliss*, 583 A.2d 208, 210 (Me.1990). In reviewing an order "purporting to clarify a divorce judgment," we apply a two-part test: (1) whether "the court's prior judgment was ambiguous as a matter of law"; and (2) whether "the court's construction of its prior judgment is consistent with its language read as a whole and is objectively supported by the record." *Greenwood v. Greenwood*, 2000 ME 37, ¶ 10, 746 A.2d 358, 361 (quotation marks omitted); *see also Thompson*, 2002 ME 39, ¶ 6, 791 A.2d 921, 923. A court may not, "under the guise of a clarification order," make a material change that modifies the provisions of the original judgment. *Bliss*, 583 A.2d at 210.

[¶ 13] In this case, there is no doubt that the court properly treated the judgment as being ambiguous. The parties' agreement that Corcoran would "provide $160 per month or as needed to meet the deficit of [Marie's] basic living expenses" can be construed to mean that the amount of the support might be adjusted as needed or that the frequency of the support might be adjusted as needed, or both. Further, the agreement did not define the

---

3. The court expressly cited M.R. Civ. P. 110A(b)(6)(B) as the source of its authority to amend the spousal support award. As Rule 110A's title states, however, it applies to cases "Involving Minor Children." Because there are no minor children involved in this case, Rule 110A does not apply.

"basic living expenses" that would establish the basis for Marie's need for support.

[¶ 14] Although ambiguous, we also have little difficulty in concluding that, when read as a whole, the agreement represents an attempt by laypersons to describe an award of general spousal support. General support is "awarded to provide financial assistance to a spouse with substantially less income potential than the other spouse so that both spouses can maintain a reasonable standard of living after the divorce." 19–A M.R.S. § 951–A(2)(A). Here, the temporally open-ended spousal support of $160 per month payable by Corcoran was intended to enable Marie to pay her basic living expenses—in other words, to maintain a reasonable standard of living after the divorce. Although the marriage was of short duration and subject to the statutory rebuttable presumption against an award of general support for marriages of less than ten years, *see* 19–A M.R.S. § 951–A(2)(A)(1), it was reasonable for the parties to agree that Marie, who suffers from brain damage caused by a head injury, might require long-term financial assistance from Corcoran to maintain a reasonable standard of living. As general support, the award is subject to modification and termination, *see* 19–A M.R.S. § 951–A(4), which is consistent with the agreement's characterization that the support would be paid "as needed."

[¶ 15] Thus, although Corcoran and Marie did not employ the language of the statute to describe Corcoran's obligation, the language they did employ—stating that Corcoran would make monthly payments of $160 to Marie to help her pay her basic living expenses as long as it was needed—describes general support. In-

deed, the divorce judgment prepared and signed by the judge expressly referred to the parties' written agreement as including an award of "general support."

[¶ 16] Divorce judgments are construed consistent with the intent of the divorce court, as revealed in the language of the judgment.[4] *Greenwood*, 2000 ME 37, ¶ 9, 746 A.2d at 360–61. We find no support in the language of the judgment at issue here for the amendment adopted by the court. Considered as a whole, the judgment does not demonstrate an intent to create a unique form of spousal support that (1) would be automatically adjusted based solely on the payee's self-determination of her need for more or less support and without the requirement of a substantial change in circumstances, and (2) gives no consideration to the payor's income, expenses, health, or any of the other statutory factors for determining spousal support set forth in 19–A M.R.S. § 951–A(5)(A)–(Q). If the divorce judgment had intended that the spousal support would deviate so substantially from the approach contemplated by the spousal support statute, it would have so provided.

[¶ 17] Thus, the court's amendment of the judgment exceeded its clarification authority because the amendment was not required to give effect to the general spousal support established by the divorce judgment, and it materially altered the substance of the support award.

[¶ 18] Our conclusion does not mean that Marie is necessarily without a remedy if $160 per month, together with her other sources of income, is not sufficient for her to maintain a reasonable standard of living. Because the divorce judgment did not bar the spousal support from being

---

4. Accordingly, we are particularly deferential where "the same judge who issued the original judgment also made the clarification."

*Thompson v. Rothman*, 2002 ME 39, ¶ 8, 791 A.2d 921, 924.

subject to future modification, *see* 19–A M.R.S. § 951–A(4), Marie may seek an increase in the monthly spousal support if she is able to demonstrate a substantial change in circumstances, in which case, both Marie's need and Corcoran's capacity to pay would have to be considered. *See Pettinelli*, 2007 ME 121, ¶ 14, 930 A.2d at 1079.

The entry is:

Judgment vacated. Case remanded to the District Court for entry of an order denying the motion to enforce.

JABAR, J., dissenting.

[¶ 19] I fully agree with the Court's finding of ambiguity in the divorce judgment's spousal support provision. I respectfully dissent, however, because I believe the record supports the District Court's interpretation of that ambiguous provision.

[¶ 20] Given the support provision's acknowledged ambiguity, I focus my analysis on the second prong of the test applicable when reviewing an order clarifying a divorce judgment: whether "the court's construction of its prior judgment is consistent with its language read as a whole and is objectively supported by the record." [5] *Greenwood v. Greenwood*, 2000 ME 37, ¶ 10, 746 A.2d 358, 361 (quotation marks omitted). In answering this question, we do not ourselves attempt to resolve the ambiguity; rather, we review the court's construction for an abuse of discretion. *See State v. Forbis*, 2004 ME 110, ¶ 7, 856 A.2d 621, 623. Not long ago, we explained the rationale for applying this level of deference:

We have suggested that whether a clarification is consistent with the judgment as a whole and supported by the record is also subject to de novo review, at least when the court has not considered extrinsic evidence. After reconsidering the issue, however, we conclude that de novo review of the resolution of the ambiguity is inappropriate. De novo review necessarily implies that there is only one correct answer; but when a provision in a judgment is ambiguous, it is possible that more than one interpretation may be both consistent with the judgment as a whole and supported by the record. In such circumstances, deference to the trial court is appropriate. We will therefore review a court's clarification of an ambiguity in a judgment for abuse of discretion.

*Thompson v. Rothman*, 2002 ME 39, ¶ 7, 791 A.2d 921, 923–24 (citations omitted).

[¶ 21] "Review for an abuse of discretion involves resolution of three questions." *Pettinelli v. Yost*, 2007 ME 121, ¶ 11, 930 A.2d 1074, 1077. Thus, to determine whether the court abused its discretion in construing the divorce judgment, we must consider the following:

(1) are factual findings, if any, supported by the record according to the clear error standard; (2) did the court understand the law applicable to its exercise of discretion; and (3) given all the facts and applying the appropriate law, was the court's weighing of the applicable facts and choices within the bounds of reasonableness.

*Id.* ¶ 11, 930 A.2d at 1077–78; *see also Smith v. Rideout*, 2010 ME 69, ¶ 13, 1 A.3d 441, 444. "In resolving any ambiguity in a

---

5. When reviewing an "order purporting to clarify a divorce judgment," we apply a two-part test: (1) whether "the court's prior judgment was ambiguous as a matter of law"; and (2) whether "the court's construction of its prior judgment is consistent with its language read as a whole and is objectively supported by the record." *Greenwood v. Greenwood*, 2000 ME 37, ¶ 10, 746 A.2d 358, 361 (quotation marks omitted).

divorce judgment, it is the intent of the divorce court, as revealed in the language of the judgment, that controls." *Greenwood,* 2000 ME 37, ¶ 9, 746 A.2d at 361.

[¶ 22] The relevant portion of the ambiguous spousal support agreement states that Corcoran "will provide $160 per month or as needed to meet the deficit of [Marie's] basic living expenses." The District Court, after hearing the testimony of both parties, interpreted this language to mean that Corcoran's spousal support obligation was "two-fold." In addition to establishing a minimum level of support at $160 per month, the court construed the agreement as requiring Corcoran "to provide additional funds 'as needed to meet the deficit [of Marie's] basic living expenses.'"

[¶ 23] In reviewing the agreement on appeal, the Court reads the support agreement differently. Contrary to the District Court's interpretation, the Court describes the agreement's language as "stating that Corcoran would make monthly payments of $160 to Marie to help her pay her basic living expenses as long as it was needed." *Supra* ¶ 15. Although the Court concedes that the ambiguous support agreement could "be construed to mean that the amount of the support might be adjusted as needed," *supra* ¶ 13, it appears to interpret the divorce judgment as providing Marie with spousal support of $160 per month—no more, no less.

[¶ 24] These conflicting interpretations underscore two important points. First, the support agreement, drafted without the benefit of legal counsel, contains considerable uncertainty regarding the precise type and amount of support ordered.[6] Although we have repeatedly cautioned that "self-represented litigants are afforded no special consideration in procedural

matters," *Clearwater Artesian Well Co. v. LaGrandeur,* 2007 ME 11, ¶ 8, 912 A.2d 1252, 1255, this case illustrates the crucial role of the divorce court in approving any support award. Notwithstanding the parties' agreement, "it is the court, not the parties, that has the ultimate responsibility for fashioning and entering any judgment." *Yoder v. Yoder,* 2007 ME 27, ¶ 10, 916 A.2d 228, 230. Better practice dictates careful scrutiny of such agreements, and, in my opinion, this agreement should never have been approved. *See Lowd v. Dimoulas,* 2005 ME 19, ¶ 5, 866 A.2d 867, 869 ("[T]here is no question that the divorce court has the authority to determine whether to reject a divorce settlement agreement." (quotation marks omitted)).

[¶ 25] Second, given the agreement's ambiguity, we must remain mindful that "more than one interpretation may be both consistent with the judgment as a whole and supported by the record." *Thompson,* 2002 ME 39, ¶ 7, 791 A.2d at 924. The Court's preferred interpretation—a general spousal support award of $160 per month—may well be a plausible reading of the agreement. In reviewing the District Court's interpretation, however, the relevant question is not whether we would have come to the same decision if deciding the issue in the first instance. Instead, we are limited to deciding whether the court's interpretation amounted to an abuse of discretion. I cannot conclude that it did.

[¶ 26] To reiterate, the support agreement states that Corcoran "will provide $160 per month *or as needed to meet the deficit of [Marie's] basic living expenses.*" (Emphasis added.) In contrast to the Court's singular focus on "$160 per month," the primacy given to providing for Marie's "basic living expenses" is high-

---

6. Other than checking the boxes marked "General" and "Transitional," the divorce court made no findings regarding the nature of Corcoran's spousal support obligation.

lighted by the three references to that term in the short, four-paragraph agreement. In addition to characterizing the agreement's purpose as "maintaining and providing financial means to [Marie] to meet her basic living expenses," the parties agreed that Corcoran would "make up the deficit of [Marie's] income to meet [the] aforementioned expenses," and explicitly sought to keep their arrangement in place "until [Marie's] circumstances allow her to assume all of her basic living expenses,"

[¶ 27] Along with reviewing the agreement's language, the court heard testimony from both parties that, in contemplation of their divorce, Corcoran and Marie jointly prepared a budget outlining Marie's living expenses.[7] For her part, Marie testified that the budget was designed to maintain the financial arrangement in place during their marriage, in which Corcoran paid the difference between her income and living expenses. Similarly, Corcoran himself, during questioning by the court, implicitly acknowledged the significance of providing for Marie's basic living expenses:

> COURT: Okay. And so you saw this word, "or as needed to meet the deficit of her basic living expenses," as you typed it, right?
>
> WITNESS: Yes. Mmhmm.
>
> COURT: Okay. So, what did that mean?
>
> WITNESS: That would mean—well, I don't know what basic living expenses are, but I mean—to me its food, shelter, clothing. That would—that's what we need to determine I guess—as what those are.

[¶ 28] Taken together, the agreement's language and the parties' testimony sug-gest that the support agreement does not merely call for a fixed monthly payment of $160. The District Court's interpretation—that the agreement obligated Corcoran to pay a minimum of $160 per month unless a greater amount was "needed to meet the deficit of [Marie's] basic living expenses"—is consistent with the agreement's language and is objectively supported by the record. In concluding to the contrary, I believe the Court fails to accord the District Court an appropriate measure of deference.

[¶ 29] After reasonably construing the agreement, the District Court properly amended the judgment to reflect its interpretation. The court's findings regarding Marie's "basic living expenses" are not clearly erroneous; they are, in fact, supported by the testimony of both parties. The court largely relied on the parties' budget, which Corcoran himself acknowledged drafting, and which he agreed represented a nearly accurate accounting of Marie's living expenses. Further, the court acted well within its discretion in adopting a mechanism designed to automatically adjust the amount of Corcoran's spousal support obligation. The agreement provided no guidance on the issue, and the court's amendments were necessary to effectuate the support award.

[¶ 30] Lastly, I find no error in the court's judgment requiring Corcoran to pay $12,101.63 in arrearage. The court correctly found that Corcoran "made no attempt to fulfill his duty to pay sufficient support to ensure that [Marie]'s basic living expenses have been met," and "avoided [Marie], discontinued payments, [and] returned bills she had forwarded to him." It is within a court's discretion to assess a party for support in arrears, *see* 19-A M.R.S. §§ 952(4), 2603 (2010), and the

---

7. Although it is the intent of the divorce court that is controlling, the parties' intent is relevant in determining the court's intent. *Greenwood*, 2000 ME 37, ¶ 9 n. 4, 746 A.2d at 361.

court, on a motion to enforce, has no affirmative statutory obligation to ensure that a party can make an immediate payment of arrearage.[8]

[¶ 31] For these reasons, I would affirm the judgment of the District Court.

---

**8.** Although Corcoran relies on 19–A M.R.S. § 951–A(5) (2010) for the proposition that a court must consider a party's ability to pay, this section governs the parties' initial award of spousal support, not motions regarding its enforcement.