2011 ME 55

**Dana V. RAMSDELL**

v.

**Beth A. WORDEN.**

Supreme Judicial Court of Maine.

Argued: Feb. 9, 2011.
Decided: May 5, 2011.

Gene R. Libby, Esq., Hillary J. Massey, Esq. (orally), Libby O'Brien Kingsley & Champion, LLC, Kennebunk, ME, for Dana V. Ramsdell.

Wendy Moulton Starkey, Esq. (orally), Sylvia C. Paneris, Esq., Rose Law, LLC, York, ME, for Beth A. Worden.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1] On appeal, Dana V. Ramsdell contends that a provision in his 2006 divorce judgment allocating to his ex-wife, Beth A. Worden, twenty percent of his "inchoate lawsuit claims" is ambiguous. He asserts that the District Court (York, *Douglas, J.*) erred in determining otherwise and in granting Worden's motion to enforce this provision of the divorce judgment. Finding no error in the court's interpretation of the divorce judgment, we affirm.

## I. FACTS AND PROCEDURE

[¶ 2] In December 2003, Dana Ramsdell filed a complaint for divorce from his wife of twenty-one years, Beth Worden. Close to eight months after filing for divorce, Ramsdell suffered a work-related injury to his left arm. In April 2005, he filed a claim in the United States District Court for the District of New Jersey seeking damages for his injury, and Worden sought damages for loss of consortium in the same lawsuit.

[¶ 3] While the personal injury litigation was pending, in February 2006 the court (*J.D. Kennedy, J.*) entered a judgment of divorce. The judgment set aside several items of nonmarital property to Ramsdell, and, for the most part, distributed the marital property equally. The parties had informed the court of the pending personal injury litigation,[1] and the divorce judgment addressed their claims as follows:

> Mr. Ramsdell also has a potential inchoate claim against his former employer. In order to encourage both parties to cooperate to maximize the value of these claims, [Ramsdell] is allocated 80% ... of any direct claims he may have, and [Worden] 20%. [Worden] is allocated 80% of her consortium and any other indirect claims she may have, and [Ramsdell] 20%.

The judgment also contained a property distribution chart, entitled "Intangible Property," which repeated this allocation of the parties' "inchoate lawsuit claims."

[¶ 4] Following the divorce judgment, both parties filed motions for reconsideration. However, neither party challenged the court's distribution of the inchoate lawsuit claims in his or her motion. Moreover, neither party moved for additional

---

1. The parties have not provided a transcript from the divorce hearing, and the divorce judgment does not reflect whether or to what extent the parties litigated the distribution of the personal injury claims at the divorce hearing.

findings of fact or conclusions of law regarding the court's distribution of these claims. *See* M.R. Civ. P. 52. Thus, the court's distribution of the parties' inchoate lawsuit claims carried over to a May 2006 amended divorce judgment without change.

[¶ 5] In April 2008, the federal district court held a trial in Ramsdell's personal injury case. The jury returned a verdict in Ramsdell's favor and awarded him $4,256,453.18 [2] in damages, apportioned as follows:

- $473,193 for lost past earnings
- $785,765 for lost future earnings
- $1,000,000 for past pain and suffering
- $2,000,000 for future pain and suffering
- $30,300.18 for past medical expenses
- $6,669 for past household services
- $67,167 for future household services
- $16 per day for past maintenance

Worden's loss of consortium claim was extinguished by the parties' divorce, and she did not pursue other claims; thus the jury awarded her no damages.

[¶ 6] After the jury returned its verdict, the federal court entered judgment for Ramsdell and reduced his damages to $3,977,173.18. Later, Ramsdell settled the case with the defendants for a lump sum of $3,000,000, and the court dismissed the case as settled. After deduction of the disbursements and attorney fees, Ramsdell's net recovery was $2,072,419.19.

[¶ 7] Ramsdell paid Worden $251,791.60 as her twenty percent share under the divorce judgment. This figure represented twenty percent of the amount that the jury had awarded for lost past and lost future earnings. Not believing that she had received the full amount to which she was entitled, Worden requested a copy of the settlement agreement. When Ramsdell did not comply, Worden filed a motion for contempt and to enforce the amended divorce judgment.

[¶ 8] At the hearing on her motion, Worden claimed that she was entitled to $600,000, representing twenty percent of the three million dollar settlement. Ramsdell contended that, in accordance with *Doucette v. Washburn*, 2001 ME 38, 766 A.2d 578, the divorce court could have awarded Worden twenty percent of only those damages that could be considered marital property—lost past earnings, past medical expenses, and past household services. Because the jury had allocated $510,162.18 to compensate for these losses, Ramsdell argued that Worden was entitled to twenty percent of this sum, or $102,032.43, and thus that he had already overpaid Worden.

[¶ 9] The motion court (*Douglas, J.*) rejected both positions. It determined that the divorce judgment unambiguously categorized the inchoate lawsuit claims as marital property and that Ramsdell had waived his argument, based on *Doucette*, that certain portions of his damages award were nonmarital by failing to file a post-judgment motion or to appeal from the divorce judgment. The motion court ordered Ramsdell to pay Worden twenty percent of his net recovery, which entitled Worden to an additional $162,692.24. The court declined to hold Ramsdell in contempt, finding that he "made a payment that he believed, in good faith, was what the divorce judgment required." [3] Rams-

2. The docket sheet reflects that the court entered judgment in favor of Ramsdell in the amount of $4,256,453.18. However, the sums awarded by the jury for the various components of Ramsdell's damages total $4,363,094.18, not including past maintenance. The reason for this discrepancy is not clear from the record before us on appeal, and it is not relevant to our decision.

3. The contempt hearing also addressed Worden's allegation that Ramsdell violated a provision of the divorce judgment ordering him not to have contact with her. The court

dell then filed this timely appeal challenging the motion court's interpretation of the divorce judgment.

## II. DISCUSSION

[¶ 10] Ramsdell contests the motion court's determination that the divorce judgment unambiguously awarded Worden twenty percent of the net recovery on his inchoate lawsuit claims. He argues that the language in the divorce judgment distributing "any direct claims" or "inchoate lawsuit claims" could and should be interpreted as excluding those components of any future damages award that were intended to replace nonmarital property. To support his interpretation, Ramsdell asserts that the "law at the time of the divorce hearing was that awards that are obtained after a divorce are presumptively nonmarital and that the party requesting that the award be divided as part of the divorce judgment bears the burden of proving that certain elements of the award are marital." However, not only is Ramsdell's proposed interpretation contrary to the plain language of the divorce judgment, but also the rationale he relies on to support this interpretation misconstrues Maine law.

### A. Classifying and Allocating Property

[¶ 11] At the time of divorce, a court must classify the parties' property as marital or nonmarital and divide the marital property in just proportions between the parties. 19–A M.R.S. § 953(1) (2010).

The term "property" includes choses in action, Levy, *Maine Family Law* § 7.3 at 7–13 to 7–14 (2010 ed. 2011), which are defined as " '[a] proprietary right in personam, such as a . . . claim for damages in tort,' " *id.* § 7.3[1] at 7–15 (quoting Black's Law Dictionary 234 (7th ed. 1999)); *accord Moulton v. Moulton,* 485 A.2d 976, 978 (Me.1984). All property acquired during the marriage is presumed marital and will be subject to equitable distribution unless it falls within a statutory exception.[4] 19–A M.R.S. § 953(3) (2010). The burden of establishing that property acquired during the marriage falls within one of these exceptions, and is therefore nonmarital, rests with the party asserting that the property is nonmarital. *Doucette,* 2001 ME 38, ¶¶ 9, 10, 19, 766 A.2d at 582–83, 585.

[¶ 12] In *Doucette,* we reviewed the divorce court's decision to distribute some components of a workers' compensation award, which the husband had received during the marriage, as marital property. *Id.* ¶¶ 1, 7, 766 A.2d at 580–81. At the divorce hearing, the husband had presented evidence to the court of his workers' compensation award comprising three forms of compensation: permanent impairment, wage replacement, and medical costs. *Id.* ¶ 11, 766 A.2d at 583. The divorce court then set aside the permanent impairment component of the award, and some, but not all, of the wage replacement and medical cost components as the husband's nonmarital property. *Id.* ¶ 8, 766 A.2d at 581.

found Ramsdell in contempt, but because this issue has not been appealed, it is not discussed further.

4. Title 19–A M.R.S. § 953(2) (2010) excludes the following from the definition of "marital property":

  **A.** Property acquired by gift, bequest, devise or descent;

  **B.** Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;

  **C.** Property acquired by a spouse after a decree of legal separation;

  **D.** Property excluded by valid agreement of the parties; and

  **E.** The increase in value of property acquired prior to the marriage and the increase in value of a spouse's nonmarital property as defined in paragraphs A to D.

[¶ 13] In addressing the husband's argument that the entire award was nonmarital property, we held that, consistent with the mandate of section 953, all property acquired during the marriage was presumed marital and "[t]he spouse urging the nonmarital status of any or all of [a lump sum workers' compensation] award must prove the existence of the nonmarital component." *Id.* ¶ 9, 766 A.2d at 582; *see* 19–A M.R.S. § 953(3). Because the husband had failed to establish that the entirety of the wage replacement and medical cost components of his award were nonmarital, we affirmed the divorce court's distribution of the marital portion of those components. *Id.* ¶¶ 12–16, 18–20, 766 A.2d at 583–85. In addition, because the permanent impairment award was separate from the other components and compensated a uniquely personal loss, we concluded that the court properly classified it as the husband's nonmarital property. *Id.* ¶ 17, 766 A.2d at 584–85.

[¶ 14] Thus *Doucette* demonstrates that, by presenting sufficient evidence to the divorce court, a spouse may establish that a damages award received or a claim for damages accrued during the marriage comprises various components,[5] and that some or all of each component is or will be "a direct replacement of nonmarital assets pursuant to section 953(2)(B)." *Id.* ¶ 10, 766 A.2d at 582. However, "to the extent that entitlement to [a claim] arises from the loss of a marital asset, including income that the beneficiary-

spouse would have earned during the marriage," it will be marital property. American Law Institute, *Principles of the Law of Family Dissolution: Analysis and Recommendations* § 4.08(2)(a) (2002). And if a party does not present evidence to support a finding that an inchoate claim accrued during the marriage is nonmarital, the court will presume it is marital property. *See* 19–A M.R.S. § 953(3).

[¶ 15] Although the value and composition of a potential damages award may be unknown at the time of divorce, the court should still distribute the property. *See Moulton,* 485 A.2d at 979. To do so, as the court did here, the court may fix the spouses' respective shares in the future payment if and when received. *See id.; Hanify v. Hanify,* 403 Mass. 184, 526 N.E.2d 1056, 1059–61 (1988); American Law Institute, *Principles of the Law of Family Dissolution: Analysis and Recommendations* § 4.08(3)(a).

[¶ 16] In this case, the divorce court fixed the respective shares of Ramsdell and Worden in the inchoate lawsuit claims. Pursuant to Maine law, the onus was on Ramsdell to establish before the divorce court that some or all of his inchoate lawsuit claim was nonmarital property. He did not do so. Following the divorce judgment, Ramsdell did not move for findings of fact or conclusions of law regarding the court's distribution of his inchoate claim, nor did he appeal from the divorce judgment. Consequently, on appeal we are

---

5. Regarding the distribution of a lump sum award, the American Law Institute explains:
Because personal-injury awards do not often specify the relative amounts allowed for pain and suffering, lost wages, and reimbursement of expenses, the allocation necessary to apply the rule of this section will usually need to be made at the time of dissolution. A dissolution court presented with this question must resolve it on the basis of the evidence then available, recog-

nizing that precisely accurate allocations are often not possible.
American Law Institute, *Principles of the Law of Family Dissolution: Analysis and Recommendations* § 4.08 cmt. c (2002); *Doucette v. Washburn,* 2001 ME 38, ¶ 17 n. 11, 766 A.2d 578, 584 (quoting American Law Institute, *Principles of the Law of Family Dissolution: Analysis and Recommendations* § 4.08(2) (Proposed Final Draft, Feb. 14, 1997)).

reviewing only whether the divorce judgment is ambiguous in its distribution of Ramsdell's claim.

## B.  Ambiguity in the Divorce Judgment

 [¶ 17] We review de novo whether a provision in a divorce judgment is reasonably susceptible to different interpretations and therefore ambiguous. *Stockwell v. Stockwell*, 2006 ME 114, ¶ 8, 908 A.2d 94, 95–96. An unambiguous judgment must be enforced in accordance with the plain meaning of the language in the judgment. *See Austin v. Austin*, 2000 ME 61, ¶ 5, 748 A.2d 996, 999.

[¶ 18] The divorce judgment provides, "In order to encourage both parties to cooperate to maximize the value of these claims, [Ramsdell] is allocated 80% ... of *any direct claims* he may have, and [Worden] 20%." (Emphasis added.) The definitions of claim include "any right to payment ... even if contingent or provisional" and "[a] demand for money." Black's Law Dictionary at 240. Thus, under the plain language of the judgment, the court treated Ramsdell's potential future recovery as marital property and awarded Worden twenty percent. This interpretation is further supported by the context of the judgment. For example, the court classified a camp, a lot, stock, and portions of Ramsdell's pension and retirement account as nonmarital, and set this property aside to him. The court did not include within this nonmarital property a portion of Ramsdell's inchoate lawsuit claim.

[¶ 19] Faced with the challenging task of allocating a potential future damages award of an unknown value, and without information as to whether the award would be a lump sum or apportioned into categories, the divorce court adopted a reasonable approach by awarding Worden twenty percent of Ramsdell's claims. The court determined that a just allocation was one that was weighted heavily in Ramsdell's

favor, but by the plain language of the divorce judgment, the court allocated Ramsdell's inchoate lawsuit claims as marital property. This provision in the divorce judgment is not ambiguous.

The entry is:

Judgment affirmed.