MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2016 ME 180
Docket:       Pen-15-618
Argued:       October 27, 2016
Decided:      December 15, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

JAMES-ROBERT G. CURTIS

v.

FLORANIA DA SILVA MEDEIROS

GORMAN, J.

[¶1]  Florania Da Silva Medeiros (Medeiros) appeals from a judgment of the District Court (Bangor, *Campbell, J.*) denying her motion to enforce her 2011 divorce from James-Robert G. Curtis and modifying the terms of that 2011 divorce judgment.   Medeiros contends that the court erroneously interpreted the original divorce judgment concerning her authority to take her and Curtis's minor child on an annual trip to Brazil, and that the court violated her fundamental right to parent by modifying the divorce judgment to award contact with the child to the paternal grandparents pursuant to 19-A M.R.S. § 1653(2)(B) (2015).   We agree with Medeiros and vacate the judgment.

# I. BACKGROUND

[¶2]   Medeiros and Curtis were married in 2002 and divorced by a judgment of the District Court (*Ende, J.*) in 2011.  The parties, who both reside in Maine, have one minor child.  Medeiros has American and Brazilian dual citizenship, and her mother lives in Brazil.

[¶3]   In the 2011 divorce judgment, the court awarded the parties shared parental rights and responsibilities, and awarded Medeiros the right to provide the child's primary residence.  The court also established a schedule for Curtis's contact with the child that accommodated his out-of-state work schedule.  With regard to Medeiros's request to travel annually with the child to Brazil, the divorce judgment states as follows:

> 7. **<u>TRIPS TO BRAZIL WITH [THE CHILD]:</u>**  The parties disagree over whether [Medeiros], who is a citizen of Brazil as well as a naturalized United States citizen, may take [the child] with her on her annual visits to Brazil each August, which are usually 10 to 14 days in duration.  Their arguments are set out in the Interim Order, dated August 24, 2010, and won't be repeated here.  [Medeiros] may take [the child] with her as of August 2013, or such earlier time as:
>
> > a. the parties agree to such in writing; or
> >
> > b. either of the parties complete the [legal] process of registering this Divorce Judgment in Brazil.
>
> 8. [Curtis] shall return [the child's] passport to [Medeiros], by February 1, 2013 or six months before any earlier trip that the

defendant makes, pursuant to paragraphs 7a or 7b, immediately above. [Curtis] shall cooperate and shall promptly sign upon request all necessary paperwork from either the United States government or the Brazilian government for [Medeiros] to travel to Brazil with [the child] in August 2013 or such earlier time as to enable [Medeiros] to make an earlier trip, pursuant to paragraphs 7a or 7b, immediately above.

No appeal was taken from the divorce judgment.

[¶4]  On February 20, 2014, Medeiros moved to modify the divorce judgment to request an amended contact schedule, noting that the child would be starting school the following September.  In the same motion, Medeiros requested that child support be modified, and that Curtis be required to complete the documents necessary to renew the child's passport.  Curtis opposed this motion, asserting there had been no substantial change in circumstances.  Four months later, on June 12, 2014, while the motion to modify was still pending, Medeiros moved to enforce the divorce judgment, and asked that the motion be heard on an expedited basis because she was seeking an order that would allow her to take the child to Brazil in 2014. Curtis opposed both motions.

[¶5]  In July of 2014, the court (*Campbell, J.*) denied Medeiros's request for an expedited hearing.  Fourteen months later, on September 16, 2015, more than eighteen months after Medeiros's motion to modify was filed, the

4

court finally conducted a hearing on Medeiros's motions to modify and enforce. After that hearing, the court denied Medeiros's motion to enforce the divorce judgment regarding annual trips to Brazil, concluding that the divorce judgment provided for Medeiros to take the child to Brazil on only one occasion, in August of 2013, and that Curtis therefore had not violated the divorce judgment by refusing to allow Medeiros to take the child to Brazil in 2014 or 2015.

[¶6] In addition, the court modified Curtis's contact schedule and, apparently in response to Medeiros's motion to modify,[1] the court modified the divorce judgment in two other respects. First, the court ordered that Medeiros could take the child on a trip to Brazil only every other year and, second, it awarded contact with the child to the paternal grandparents, citing 19-A M.R.S. § 1653(2)(B):

> The court has the authority pursuant to 19-A M.R.S. §1653(2)(B) to award reasonable rights of contact with a minor child to a third party. . . . The court agrees with [the guardian ad litem's] opinion regarding the importance of ordering that the paternal grandparents are [to] have contact with [the child] one weekend a month. The court finds, that not only is it in the best interest of

---

[1] Curtis did not file *any* motion to modify the divorce judgment. He only opposed Medeiros's motions to modify and to enforce.

the child for [her] to have contact with her paternal grandparents one weekend a month, but also that it is necessary to protect her from a psychological perspective. The court further finds that this contact will not interfere with the mother's fundamental right to parent her own child, nor will it infringe on the mother's right to make decisions regarding her child.

Therefore, the court modifies the prior contact Orders in this case and hereby ORDERS that one weekend a month, while [Curtis] is working out of State, [the paternal grandparents] shall have contact with [the child from Saturday morning to Sunday evening]. . . .

[¶7]    Medeiros moved to reconsider and for further findings and conclusions as to the Brazil travel and grandparent contact issues. *See* M.R. Civ. P. 52(b), 59(e), 120(c). The court declined to reconsider its decision, but issued further findings, and again invoked 19-A M.R.S. § 1653(2)(B) as its authority for awarding reasonable rights of contact with a nonparent. Medeiros timely appeals.

## II.  DISCUSSION

A.    Travel to Brazil

[¶8]    We first address Medeiros's contention that the court misinterpreted the 2011 divorce judgment to provide only for a single trip to Brazil in 2013, and that the court therefore erred by declining to enforce the term in the 2011 divorce judgment allowing her to take the child to Brazil on an annual basis beginning in 2013. We review de novo whether a provision in

a divorce judgment is ambiguous, i.e., "reasonably susceptible to different interpretations," by examining that provision in the context of the divorce judgment as a whole. *Ramsdell v. Worden*, 2011 ME 55, ¶ 17, 17 A.3d 1224; *Stockwell v. Stockwell*, 2006 ME 114, ¶ 11, 908 A.2d 94. "An unambiguous judgment must be enforced in accordance with the plain meaning of the language in the judgment." *Ramsdell*, 2011 ME 55, ¶ 17, 17 A.3d 1224. When the judgment is unambiguous, the court "may not, under the guise of a clarification order, make a material change that modifies the provisions of the original judgment." *Burnell v. Burnell*, 2012 ME 24, ¶ 15, 40 A.3d 390 (quotation marks omitted). If the divorce judgment is ambiguous, however, the court has the inherent authority to construe and clarify the decision. *Bonner v. Emerson*, 2014 ME 135, ¶ 12, 105 A.3d 1023.

[¶9]  We conclude that the unambiguous language of the original 2011 divorce judgment allows Medeiros to take the child on an annual trip to Brazil. It specifically refers to plural "TRIPS TO BRAZIL" and discusses Medeiros's request to take the child "with her on her *annual visits* to Brazil *each* August, which *are* usually 10 to 14 days in duration." (Emphases added.)  By their plain terms, the references in the divorce judgment to the trip in August of

2013 concern the timing and practicalities of the first trip, and not the exclusivity of that trip.

[¶10] Indeed, any other interpretation would create the absurd result that Medeiros would be forced to litigate the issue of travel every year that she wanted to take the child to visit her maternal grandmother. *See Griffin v. Griffin*, 2014 ME 70, ¶ 18, 92 A.3d 1144 (requiring courts to interpret plain language to avoid "absurd, illogical or inconsistent results" (quotation marks omitted)). To interpret the divorce judgment to invite or require a yearly motion to modify is contrary to the strong public policy in favor of finality in divorce judgments and in decisions regarding the care of children.[2] *See Black v. Black*, 2004 ME 21, ¶ 15, 842 A.2d 1280; *Spaulding v. Spaulding*, 460 A.2d 1360, 1364 (Me. 1983) (recognizing the "compelling need to give a measure of finality to custody decrees in order to [ensure] a more stable environment for the child"). "If the divorce judgment had intended that the [order] would deviate so substantially from the approach contemplated by the . . . statute, it would have so provided." *Corcoran v. Marie*, 2011 ME 14, ¶ 16, 12 A.3d 71.

---

[2] Moreover, it is unlikely that Medeiros would be permitted to do so given that a motion to modify is appropriate only when there is a significant change in circumstances, *see* 19-A M.R.S. § 1653(10)(B), 1657(2) (2015); *Sargent v. Braun*, 2006 ME 96, ¶¶ 6-8, 902 A.2d 839, and her desire each year to take the child to Brazil is unlikely to qualify as a significant change in circumstances. As noted throughout this opinion, Curtis did not file a motion to modify and, in fact, asserted that there had been no substantial change in circumstances since the time of the divorce.

[¶11] Because the divorce judgment unambiguously provides for the child's annual travel to Brazil, the denial of the motion to enforce that provision and the court's modification of that provision were error. *See Burnell*, 2012 ME 24, ¶ 15, 40 A.3d 390; *Ramsdell*, 2011 ME 55, ¶ 17, 17 A.3d 1224; *see also Corcoran*, 2011 ME 14, ¶ 17, 12 A.3d 71 ("[T]he court's amendment of the judgment exceeded its clarification authority because the amendment was not required to give effect to the [terms] established by the divorce judgment, and it materially altered the substance of the . . . award."). We therefore vacate both (1) the denial of Medeiros's motion to enforce this provision of the judgment and (2) the portions of the modified divorce judgment providing for biennial trips to Brazil. We remand for the court to enter an order granting the motion to enforce and establishing the terms of enforcement.[3]

B.     Grandparent Contact

[¶12] Medeiros also challenges the court's modification of the divorce judgment to award contact with the child to the paternal grandparents pursuant to 19-A M.R.S. § 1653(2)(B). That provision allows that "[t]he court

---

[3] On remand, the grant of the motion to enforce should be entered as expeditiously as possible given that Medeiros has already lost the opportunity to take her child to Brazil in 2014, 2015, and 2016.

may award reasonable rights of contact with a minor child to a 3rd person" in the context of a parental rights and responsibilities order. 19-A M.R.S. § 1653(2)(B). It otherwise gives no guidance as to who may seek such contact and in what circumstances it may be ordered.[4]

[¶13] Medeiros indicated that she was more than willing to allow her daughter to continue to spend time with her paternal grandparents, but that she did not want that contact to occur pursuant to the rigid schedule or authority of a court order. She argues that the third-party contact award is a violation of her fundamental right to parent. We agree. Our decisions regarding parents' rights all begin with the same premise—that, as a matter of substantive due process, parents enjoy a fundamental constitutional right to determine the "'care, custody, and control of their children.'" *Rideout v. Riendeau*, 2000 ME 198, ¶¶ 12, 21, 28, 761 A.2d 291 (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)) (presuming that fit parents act in their children's best interests); *see Conlogue v. Conlogue*, 2006 ME 12, ¶ 12, 890 A.2d 691. Included within that right is a parent's authority to decide who

---

[4] We noted in *Pitts v. Moore*, "We have not yet evaluated the nature or extent of the remedy provided by 19-A M.R.S. § 1653(2)(B)." 2014 ME 59, ¶ 13 n.6, 90 A.3d 1169; *see, e.g., Young v. Young*, 2004 ME 44, ¶ 4 & n.3, 845 A.2d 1144 (remanding the matter for the District Court to consider section 1653(2) and de facto parenthood principles in evaluating a stepfather's relationship to a child).

is allowed to associate with the child. *Pitts v. Moore*, 2014 ME 59, ¶ 11, 90 A.3d 1169; *Rideout*, 2000 ME 198, ¶¶ 12, 18, 761 A.2d 291. Because a fundamental constitutional right is at issue, we evaluate with strict scrutiny the State's interference with that right; "the State's action [must] be narrowly tailored to serve a compelling state interest." *Rideout*, 2000 ME 198, ¶ 19, 761 A.2d 291.

[¶14] We interpret section 1653(2)(B) de novo as a matter of law by first evaluating the plain language of the provision. *See In re Jacob C.*, 2009 ME 10, ¶ 9, 965 A.2d 47. In doing so, we must presume that the statute is constitutional; it is Medeiros's burden to establish otherwise. *See Rideout*, 2000 ME 198, ¶ 14, 761 A.2d 291. Our role in deciding the constitutionality of a provision is guided by two principles: "'one, never anticipate a question of constitutional law in advance of the necessity of deciding it; the other, never formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Id.* ¶ 15 (alterations omitted) (quoting *United States v. Raines*, 362 U.S. 17, 21 (1960)).

[¶15] In keeping with these two principles, we need go no further in evaluating the court's application of section 1653(2)(B) than the preliminary procedure by which the contact award was made. We have consistently

held—in the context of both the Grandparents Visitation Act, 19-A M.R.S. §§ 1801-1805 (2015), and de facto parenthood matters—that a third party seeking to interfere with the fundamental right to parent must affirmatively demonstrate, on a prima facie basis, standing to commence the litigation sufficient to justify the interference that is created just by having to defend against such a petition.  19-A M.R.S. §§ 1803(2), 1891(2) (2015); *Pitts*, 2014 ME 59, ¶¶ 12, 14 & n.3, 35, 90 A.3d 1169 (stating that a compelling state interest exists only in "exceptional circumstances," that is, when the child will suffer "harm" without state intervention); *see Philbrook v. Theriault*, 2008 ME 152, ¶¶ 16-22, 957 A.2d 74; *Conlogue*, 2006 ME 12, ¶¶ 13, 15-18, 890 A.2d 691; *Robichaud v. Pariseau*, 2003 ME 54, ¶¶ 4-11, 820 A.2d 1212; *Rideout*, 2000 ME 198, ¶¶ 22-30, 761 A.2d 291.  Such a third-party petitioner is therefore required to attest, from the outset of the litigation, to the sufficiency of his or her relationship with the child or to some other extraordinary circumstance.[5]  19-A M.R.S. §§ 1803(2), 1891(2); *see Pitts*, 2014 ME 59, ¶ 35, 90 A.3d 1169; *Rideout*, 2000 ME 198, ¶ 30, 761 A.2d 291.

---

[5]  Standing may be determined based only on the affidavit, or after a testimonial hearing at which only the issue of standing is considered.  *Eaton v. Paradis*, 2014 ME 61, ¶ 8 n.5, 91 A.3d 590; *Davis v. Anderson*, 2008 ME 125, ¶ 17, 953 A.2d 1166.

[¶16]  Our decision in *Davis v. Anderson*, 2008 ME 125, 953 A.2d 1166, is directly on point.  In that case, the paternal grandparents moved to intervene in a parental rights dispute between the parents.  *Id.* ¶ 5.  The trial court granted the motion to intervene pursuant to section 1653(2)(B) and M.R. Civ. P. 24(a)(2).  *Davis*, 2008 ME 125, ¶ 12, 953 A.2d 1166.  We rejected the result, holding that the grandparents' petition to intervene in the parental rights action pursuant to section 1653(2)(B) "should be considered with at least the same level of scrutiny as that required for a petition under the Grandparents Visitation Act," that is, by demonstrating, on a prima facie basis, their standing as de facto parents, or according to some other extraordinary circumstance.  *Davis*, 2008 ME 125, ¶ 12, 15, 17, 953 A.2d 1166; *see Katon v. Brandi M.*, 2011 ME 131, ¶¶ 2-3, 32 A.3d 1047 (upholding the dismissal of a grandparent visitation petition when the contact alleged was "typical for a grandparent and not extraordinary"); *Philbrook*, 2008 ME 152, ¶¶ 2-5, 16-22, 26, 957 A.2d 74 (concluding that the "loving and helpful grandparents" with whom the children had lived periodically did not establish standing); *Robichaud*, 2003 ME 54, ¶¶ 6-11, 820 A.2d 1212 (holding that a "pattern of intermittent contact" in the form of "occasional visits . . . lasting from one day to one week over three and one-half years, intermixed with several periods of

daily contact . . . typified [the contact] that one would anticipate from a connected, extended family" and was "not extraordinary" enough to establish a compelling state interest).

[¶17]  Of course, one predicate to all of this process is that the person to whom contact may be awarded must be both a party to the action and a petitioner seeking such contact.  *See* M.R. Civ. P. 17(a) ("Every action shall be prosecuted in the name of the real party in interest."); M.R. Civ. P. 24 (providing for the intervention of a person who claims an interest in the outcome of the litigation); *Poulos v. Mendelson*, 491 A.2d 1172, 1175 (Me. 1985).  Here, the paternal grandparents are not parties to the action, did not seek to intervene in the matter pursuant to M.R. Civ. P. 24, did not file an affidavit or offer any testimony to establish their standing on a prima facie basis, did not testify at the hearing, and did not institute any separate proceeding for contact with the child.  Notwithstanding these failings, the court found that the paternal grandparents "would clearly have been able to establish standing either to intervene pursuant to [M.R. Civ. P.] 24 or pursuant to the Grandparents Visitation Act."  As in *Davis*, this evaluation of standing does not satisfy the requirements of strict scrutiny.  In fact, in none of the cases discussing the avenues for a third party to obtain parental rights and

14

responsibilities or contact with a child have we even contemplated a scenario in which the third parties are not "parties" to the action at all.

[¶18] Consistent with the minimum procedural requirements we have announced as safeguards on the fundamental right to parent, we conclude that before a court may grant a third party contact with a child pursuant to 19-A M.R.S. § 1653(2)(B), the third party must file both a motion to intervene in the matter and his or her own motion seeking such contact. The motion for contact must—at a minimum—be accompanied by an affidavit that demonstrates, on a prima facie basis, the party's standing to interfere with the fundamental right to parent. Because these requirements were not met as to the paternal grandparents here, we vacate the modified divorce judgment on that basis and remand for reconsideration of Medeiros's motion to modify to the extent the portions of the order that allocated contact between the parents may be affected by the absence of the award of contact to the paternal grandparents.[6]

[¶19] Finally, Curtis's suggestion that the court was not ordering contact with the grandparents pursuant to 19-A M.R.S. § 1653(2)(B), but was

---

[6] Medeiros's request for attorney fees in prosecuting this appeal should be addressed by the trial court on remand. *See* 19-A M.R.S. § 105 (2015); *True v. Harmon*, 2015 ME 14, ¶ 10, 110 A.3d 650; *Conlogue v. Conlogue*, 2006 ME 12, ¶ 24, 890 A.2d 691.

instead establishing a "scheduling mechanism rooted in the rights of the father" is not accurate. Curtis did not actually seek to modify the support order, he did not request that his own contact (to be exercised on many weekends by his parents instead of himself) be scheduled on those weekends, and he did not make this argument to the trial court with any clarity. The court expressly relied on and cited to section 1653(2)(B) in both its modified divorce judgment and its order on the motion for further findings. We express no opinion as to what relief a court might grant to a parent who makes such a request.

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

Christopher R. Largay, Esq. (orally), Largay Law Offices, P.A., Bangor, for appellant Florania Da Silva Medeiros

Jason C. Barrett, Esq. (orally), Eaton Peabody, Ellsworth, for appellee James-Robert G. Curtis

Bangor District Court docket number FM-2010-160
FOR CLERK REFERENCE ONLY